**Gary W. ROTH, Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellee.**

**No. 94–1407.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 18, 1994.

Decided Jan. 23, 1995.

William Bauer, Burlington, IA, for appellant.

John Beamer, U.S. Atty., Des Moines, IA, for appellee.

Before MAGILL and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

MAGILL, Circuit Judge.

Gary W. Roth appeals from a final order of the district court [1] affirming the decision of the Secretary of Health and Human Services denying him supplemental security income (SSI) and disability insurance benefits. For the reasons discussed below, we affirm.

---

* THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

## I. BACKGROUND

Roth filed for benefits, alleging that he became disabled on November 15, 1990, due to back problems. The evidence introduced at the July 13, 1992 hearing establishes the following facts. Roth has a GED certificate and has attended truckdriving school. He has worked as a truckdriver, dishwasher, cook, park attendant, and a Wal–Mart department manager. Roth and his wife testified that Roth's activities in the home are seriously limited by his condition and the pain it causes. They testified that Roth loses sleep due to pain, suffers from headaches, and is limited in his ability to walk, to carry objects weighing more than ten pounds, and to perform household chores. They also testified that Roth tries to do things around the house but must take frequent fifteen- to twenty-minute breaks to relieve the pain. They stated that Roth is unable to handle stress and his temper. Roth was taking no medication at the time of the hearing, although he had taken medication in the past.

Roth's back problems may be traced to 1982, when he sought treatment for low back pain and related conditions and was told to begin an exercise regimen. After his discharge from the military in 1985, Roth entered the work force, where he remained until he was fired from his job as a truckdriver in 1990. Roth testified that his back condition was worsening, and that he would have been forced to quit if he had not been fired.

On December 21, 1990, Roth sought treatment at the University of Iowa Hospital (the University) for chronic low back pain and left hip pain. X-rays showed no gross loss of disc space height, good alignment, and no gross instability. The University staff concluded that Roth's symptoms "essentially sound minimally changed" from those complained of in 1982. A magnetic resonance imaging (MRI) scan performed in January 1991 revealed a questionable central disc bulging, but no apparent herniation.

Roth returned to the University on February 8, 1991, and was further examined. Roth was mildly uncooperative during this examination. Ultimately, the University recommended against surgery (which displeased Roth) and referred him to the Spinal Diagnostic and Treatment Center (SDTC). The SDTC evaluated Roth eleven days later.

The SDTC evaluation revealed that Roth was not self-limiting and exhibited very little pain behavior. His lifting limits were 100 pounds no more than four times per hour and a repetitive lifting limit of 50 pounds. Roth had a 91% range of motion. The SDTC concluded that Roth's pain was due to severe deconditioning and inactivity. The SDTC recommended that Roth begin reconditioning and decrease or stop his smoking, but the staff observed that Roth did not seem committed or convinced that aggressive rehabilitation was in his best interest. The SDTC staff believed that the formal rehabilitative program was not necessary because the reconditioning would be effective treatment.

On April 1, 1991, Roth was examined by Dr. Pence, a chiropractor, who diagnosed Roth as suffering from lumbar disc degeneration with displacement resulting in posterior facet syndrome with nerve root compression and resulting sciatica and lumbalgia. Dr. Pence recommended that Roth's sitting, standing, walking and related activities be restricted, and that Roth lift and carry no more than ten pounds.

On October 28, 1991, Dr. Lumber, a specialist in internal medicine, examined Roth at the request of the state agency. Roth reported that he could lift twenty pounds, but that carrying it caused him pain. He reported that he could stand or sit for one to two hours. Roth's range of motion was limited. Dr. Lumber concluded that if Roth's reported history was accurate, he would not be able to do any work requiring standing or sitting for more than two hours at a time.

On January 27, 1992, Dr. England performed a psychiatric evaluation of Roth, concluding that Roth was able to concentrate and follow instructions, but that his ability to interact with others was somewhat impaired. Dr. England noted that Roth reported depression and sleep disturbance due to his pain. Roth believed that there was nothing that he or anyone else could do for his pain, and that disability was the only answer. Dr.

England recommended further evaluation,[2] and was of the opinion that treatment with anti-depressants could alleviate many of Roth's symptoms.

After the hearing, the ALJ denied Roth's application for benefits. The Appeals Council of the Social Security Administration denied Roth's petition for review. The district court affirmed the decision of the ALJ, which became the final decision of the Secretary, and Roth appealed.

## II. DISCUSSION

Roth argues that there was not substantial evidence on the record as a whole to support the Secretary's decision to deny benefits. Our review of this issue is very narrow, and Roth bears the burden to prove that he is entitled to benefits. Our review of the administrative record convinces us that substantial evidence supports the decision to deny benefits because: (1) Roth's condition is treatable and he has not complied with the prescribed treatment; and (2) the ALJ properly discredited Roth's subjective complaints of pain.

### A. Standard of Review

■ We review the Secretary's decision only to determine whether the decision is supported by substantial evidence on the record as a whole. *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992). We consider not only the evidence that supports the Secretary's position, but also the evidence in the record that detracts from the decision. If, after making this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings, we must affirm the decision" of the Secretary. *Id.*

### B. Burden of Proof

■ Roth bears the burden of proving disability. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992). Although the ultimate burden of persuasion does not shift, the burden of production shifts. In the first stage of the analysis, Roth must demonstrate that he is unable to do his past relevant work. The ALJ found that Roth was unable to return to his past relevant work. Admin.R. at 18. Thus, the burden shifted to the Secretary to demonstrate that there are jobs available in significant numbers in the national economy that Roth is able to perform. The Secretary satisfied this burden by providing a vocational expert who testified as to the availability of jobs in the national economy for persons with various characteristics.

### C. The Pursuit of Treatment

■ "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993). Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits. *Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir.1989); *see also* 20 C.F.R. § 404.1530(a); 20 C.F.R. § 416.930(a).

■ There is ample evidence in the administrative record to support a denial of benefits because of Roth's noncompliance with prescribed treatment. Dr. England's observation during his examination of Roth sums it up when he remarks that Roth "presents a somewhat 'poor me' attitude and feeling that there is really no hope that ... he can do anything for himself and that disability is the only answer at this point." Admin.R. at 231. Other treatment personnel noted that Roth "will not commit himself," Admin.R. at 187, or "does not seem to be committed or convinced that a very aggressive, positive rehabilitation program is in his best interest." Admin.R. at 186.

Moreover, at least three examples of disregard for prescribed treatment appear in the record. First, Roth testified that he was given a weight limit of twenty pounds in

---

2. Other clinicians had observed potential psychological disorders. Roth exhibited a depressive mood, anxiety and tension in 1982, and was discharged from the military in 1985 based on a diagnosis of personality disorder. Roth also underwent a psychological evaluation at SDTC.

The psychologist observed that Roth was not committed to rehabilitation, and would possibly slip into the role of a chronic malcontent in group therapy. In October 1991, Roth reported to Dr. Lumber that he had not received any treatment for these emotional problems.

1982, but he "never listened to" it, Admin.R. at 42, and worked as a park attendant between 1986 and 1988, Admin.R. at 39. Roth testified that the park attendant job required lifting up to one hundred pounds. Admin.R. at 40. Second, during his 1982, 1990 and 1991 doctor visits, Roth was given exercise regimens. Admin.R. 165, 171, 173, 200. Notwithstanding this fact, the SDTC found that "much of the pain that [Roth was] experiencing [in early 1991 was] the result of severe deconditioning and inactivity, rather than [the] original back injury." Admin.R. at 178. Roth's testimony and the physical assessment by the SDTC, Admin.R. at 183–84, confirmed this observation. Third, despite repeated psychiatric evaluations, and numerous and varied diagnosed disorders, Roth took no medication and sought no treatment for his emotional problems. Dr. England specifically noted that such medication might not only relieve some of Roth's mood and attention deficit disorders, but might also relieve some of Roth's chronic pain. Admin.R. at 232. In light of this evidence, we have no difficulty affirming the decision of the Secretary.

## D. Credibility of Subjective Reports of Pain

■ The ALJ found that Roth suffers from a back impairment, and he incorporated this condition into the hypotheticals posed to the vocational expert. The ALJ also found that Roth suffers from an affective disorder, and this condition was likewise incorporated into the hypotheticals posed. The expert's responses to these hypotheticals indicated that if Roth's subjective complaints of pain were credited, no jobs were available in significant numbers, but if the complaints were discredited, significant numbers of jobs were available. Thus, the substantial evidence issue distills to whether the ALJ properly discredited Roth's subjective complaints of pain. We reject Roth's contention that the ALJ improperly discredited his subjective complaints of pain.

The factors to be considered when evaluating Roth's subjective complaints of pain are listed in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted).

The ALJ accurately summarized the *Polaski* inquiry as forcing the ALJ to

> decide if the claimant's complaints of pain are consistent with all the evidence presented including his or her prior work record and the observation of third parties and examining physicians regarding such matters as (1) the claimant's activities, (2) the duration, frequency and intensity of pain, (3) precipitating and aggravating factors, (4) dosage, effectiveness and side effects of medication, and (5) functional restrictions. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

Admin.R. at 14 (paraphrasing *Polaski*); accord *Stout,* 988 F.2d at 855; *Locher,* 968 F.2d at 728. The ALJ reviewed the evidence and found Roth's subjective complaints of pain to be inconsistent with the record as a whole. The ALJ concluded that although Roth suffered from some pain, the pain was not fully disabling, and that Roth's (and his wife's) testimony to the contrary was not credible. Given the ALJ's careful identification of inconsistencies and Roth's failure to follow the prescribed course of treatment, we find that the ALJ's decision is supported by substantial evidence in the record as a whole. The vocational expert's answers to the hypotheticals indicate that there is a significant number of jobs available to a person in Roth's condition. Accordingly, there is substantial evidence to support the denial of benefits. *See Stout,* 988 F.2d at 854–55.

## III. CONCLUSION

Because we find sufficient evidence on the record as a whole to support the decision of the Secretary, we affirm the district court's affirmance of the denial of benefits.