983 F.Supp. 865 (1997)
Charles J. HIGGINS, Sr., Plaintiff,
v.
John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.
No. 1:96CV00091 LOD.
United States District Court, E.D. Missouri, Southeastern Division.
September 30, 1997.
*866 Thomas E. Bischof, Partner, Powell and Ringer, Dexter, MO, for Plaintiff.
Maria C. Sanchez, Office of U.S. Atty., St. Louis, MO, for Defendant.

ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE
DAVIS, United States Magistrates Judge.
This matter is before the Court on the cross-motions of the parties for summary judgment pursuant to Rule 56, Fed.R.Civ.P. This cause is before the undersigned Magistrate Judge by consent of the parties pursuant to 28 U.S.C. 636(c).
Plaintiff filed applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, et seq. (Tr. 82-84, 107-109) Plaintiff alleged that he was disabled due to emphysema, bronchitis, fluid build up, arthritis, and elbow problems. (Tr. 82-84, 107-109, 128)
*867 Plaintiff's applications were denied initially and on reconsideration. (Tr. 76-81, 86-89, 102-105) On November 15, 1994, there was a hearing before an Administrative Law Judge (ALJ) on plaintiff's applications. (Tr. 25-75) On February 7, 1995, the ALJ rendered a decision in which he found that plaintiff was not under a disability as defined in the Act at any time through the date of the decision. (Tr. 10-19) Subsequently, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 4-5) The decision of the ALJ is therefore the Secretary's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

MEDICAL EVIDENCE
On January 21, 1993, plaintiff was seen at the Dexter Memorial Hospital for flu-like syndrome. (Tr. 142) A chest X ray showed mild acute bronchitis, but an otherwise normal chest. (Tr. 143) Plaintiff was told to not work for two days and to decrease his smoking. (Tr. 142) On July 29, 1993, plaintiff complained of swelling in his feet and was told to decrease his salt intake. (Tr. 164)
On October 7, 1993, Dr. Chul Kim examined plaintiff to determine his disability status. (Tr. 146) Plaintiff complained of lung, joint, and fluid problems. (Tr. 146) Plaintiff reported that he has suffered from bronchitis and asthma all of his life. (Tr. 146) He also stated that he developed an acute breathing problem while he was working and that he was diagnosed as suffering from emphysema. (Tr. 146) Plaintiff also complained of shortness of breath in cold or damp weather or if he walks one-half mile. (Tr. 146) He coughs after any kind of activity or if he takes a deep breath and also wheezes at times. (Tr. 146)
Plaintiff also complained of joint problems, mostly in the hands and feet. (Tr. 146) He sometimes cannot not make a fist because of finger pain and his fingers are sore when he presses them. (Tr. 146) Plaintiff also has low back pain in damp weather. (Tr. 146) He sometimes takes 10-12 aspirin tablets a day for his joint pain. (Tr. 146)
Plaintiff's right hand at the 5th MCP joint is swollen all of the time and both elbows are painful on bilateral aspect. (Tr. 146) When he touched the medial epicondyle of elbow, the pain runs to his hand. (Tr. 146) Plaintiff also started gaining weight and retained fluid in the abdomen and legs after he stopped smoking. (Tr. 146)
Dr. Kim's examination showed that plaintiff was a fifty year old, obese male with no acute distress. (Tr. 147) His mental state was clear with good memory. (Tr. 147) There was no significant swelling, deformity, or limitation in the range of motion of any major joint, although his elbows were tender. (Tr. 148) Plaintiff's gait was stable, he could bear full weight on either leg, he was able to walk on heels and toes, he could get off the examining table, and he could squat fully. (Tr. 148) There was decreased sensory for pain and cold on his right lower leg. (Tr. 148) His hand grip and fine finger movement were normal. (Tr. 148)
A pulmonary function test showed a mild degree of restrictive and moderate severe degree of obstructive lung disease, with some improvement after a bronchodilator. (Tr. 148) Dr. Kim diagnosed plaintiff as suffering from chronic obstructive lung disease, multiple joint pain with early osteoarthritis, and weight gain since he quit smoking. (Tr. 148)
On June 14, 1994, Dr. James Critchlow saw plaintiff and noted that plaintiff was smoking and had swelling of the extremities. (Tr. 197) On June 18, 1994, plaintiff was seen at the Dexter Memorial Hospital for asthma and nicotine addiction. (Tr. 196) Plaintiff refused additional breathing treatment and wished to leave, despite advice to the contrary. (Tr. 196) Plaintiff was discharged the same day as stable and told to use his inhaler every four hours. (Tr. 196)
Dr. Critchlow saw plaintiff again on June 22, 1994 and noted that plaintiff was seen in the emergency room four days earlier complaining of chest pain and shortness of breath. (Tr. 197) Dr. Critchlow encouraged plaintiff to stop smoking. (Tr. 197)
On October 14, 1994 plaintiff reported trouble breathing, and he was still smoking. (Tr. 205) On October 18, 1994, plaintiff was diagnosed as having a large ganglion dorsum on his right hand, which was excised by an operation. (Tr. 220) Prior to the operation *868 plaintiff denied any cardiac or pulmonary symptoms, although he stated that he believed he had asthma in the past. (Tr. 218)
On November 1, 1994 plaintiff reported intermittent chest pain. (Tr. 211) A chest X ray revealed a stable chest without evidence of active pulmonary disease. (Tr. 214) Additionally, plaintiff's heart was of normal size. (Tr. 214)

HEARING TESTIMONY
At his hearing before the ALJ, plaintiff testified that he was 52 years old. (Tr. 28) He had quit smoking, but he started up again due to his weight gain. (Tr. 31) He saw Dr. Critchlow once for treatment on his breathing. (Tr. 32) He also saw a Dr. Groomert when his feet swelled up, and she found that plaintiff had fluid in his system. (Tr. 32) He saw a Dr. King on a regular basis and a Dr. Nonely who was the emergency room doctor in Dexter, Missouri. (Tr. 32) Plaintiff sometimes went to the emergency room when he had chest pains and trouble breathing. (Tr. 34)
Plaintiff was working on a farm in Tennessee doing general labor, but had to quit due to his breathing problems caused by the dust and damp weather. (Tr. 36) He then moved to Missouri and worked on an assembly line butchering chickens. (Tr. 36) A Dr. Pole told plaintiff that he had to quit due to his emphysema. (Tr. 36-37) Plaintiff also worked occasionally as an outdoor carpenter. (Tr. 36) He presently works fours hours a day two days a week for an auction service. (Tr. 37-38) Plaintiff holds up items for sale to be bid on and makes $50 a week. (Tr. 38)
Plaintiff has a ruptured left eardrum and was told that he was 75% deaf. (Tr. 38) Plaintiff claimed that he cannot work due to shortness of breath, pain in his chest, and weakness. (Tr. 39) He also has arthritis in his shoulders, and sometimes his wife will have to take off his tee shirt because he is unable to lift his arms. (Tr. 39-40) His emphysema causes pain in his chest. (Tr. 40) In addition to cold and damp weather, any exertion causes plaintiff shortness of breath and pain. (Tr. 41)
Plaintiff has trouble walking due to shortness of breath and a bad ankle. (Tr. 41) His lower back, left hand, and two of his knuckles cause constant pain. (Tr. 41) When plaintiff gets up in the morning, he eats breakfast and play cards and other games with his wife. (Tr. 42) Sometimes they go down to the pool hall and socialize, and he occasionally shoots a game of pool. (Tr. 42) They then return home, eat dinner, and go to bed. (Tr. 42)
On pretty days he will sometimes go out and walk a bit. (Tr. 42) He can walk about a block and then his chest begins to hurt. (Tr. 43) He then has to take a break and a shot of his "puffer." (Tr. 43) When it rains, he has to go to the hospital for a breathing treatment. (Tr. 43)
The last time plaintiff went to the hospital was when he overexerted himself at work. (Tr. 44) He also had to go to the hospital once after working three hours at an auction just holding items up because of his breathing problems. (Tr. 45) Plaintiff has also had problems with his memory. (Tr. 47) He noticed that when he was working as a carpenter he would forget numbers and sometimes when driving he would forget where he was. (Tr. 47)
Plaintiff also stated that he is in constant lower back pain. (Tr. 56) He hurt his back in 1972 and was told by a doctor that he does not have a ruptured disc, but that when he moves a certain way it swells up. (Tr. 48) It is a dull pain that never goes away, and he took eight aspirins on an average day while at work to control the pain. (Tr. 49) In 1993 he worked for Lynn Allen Construction, but had to stop working because of his chest, back, and leg pain. (Tr. 49) Plaintiff once passed out six stories up while working in construction in 1990. (Tr. 49-51)
Three months prior to the hearing, plaintiff had a ganglion cyst and calcium deposits removed from his wrist. (Tr. 52) Plaintiff can only raise his arms to about shoulder level. (Tr. 53) Plaintiff only completed the eighth grade and has had no additional training. (Tr. 54)
Plaintiff's wife testified that occasionally she has to take off plaintiff's tee shirt and help him remove his shoes. (Tr. 55) Last *869 winter, she had to help plaintiff wash himself. (Tr. 55-56) Plaintiff does not need any help shaving and combing his hair. (Tr. 56) Plaintiff does not sleep very well at night because of his difficulty breathing. (Tr. 57)
Plaintiff's wife also testified that plaintiff has trouble walking, about twice a month. (Tr. 58) When it is damp or cold is when plaintiff has problems with all of his illnesses. (Tr. 58) Plaintiff's asthma and emphysema cause him trouble even when it is not damp and cold. (Tr. 58) Plaintiff has trouble sitting, but can sit in a straight-backed chair for a couple of hours. (Tr. 60) Plaintiff cannot bend over to pick up heavy objects. (Tr. 60) He also has trouble getting in and out of cars and cannot carry groceries. (Tr. 61-63)
Plaintiff was later reexamined and testified that he cannot sit continuously in a straight-back chair for more than 30 minutes before he needs to get up and walk around for about 15 minutes. (Tr. 66) This is because his back begins to hurt. (Tr. 66-67) Plaintiff stated he could not sit for an eight hour day at a job. (Tr. 67) Additionally, certain paints and enamels affect his lungs. (Tr. 68)
A vocational expert also testified at the hearing. (Tr. 63-72) The ALJ told the expert to assume a 52-year-old man with an eighth grade education, who can walk a half a mile; can stand for 30 minutes; can sit for as long as two hours; can stoop and bend normally but not for purposes of performing job tasks; cannot lift any weight of ten pounds or over from the floor, but can lift ten pounds from a table; cannot do a job requiring using his arms above the level of shoulders; and has to work in an environment which is not damp or cold or dusty, and asked if there was any work in the national economy such a man could perform. (Tr. 63) The expert stated that even with the transferable skills of a carpenter, there were no jobs such a man could perform. (Tr. 64)
The ALJ then asked if the restriction to a non-dusty environment was removed if there were any jobs such an individual could perform. (Tr. 65) The expert stated that there exists a variety of sedentary occupations such a person could perform, but that light work was contraindicated due to the standing limitation. (Tr. 65) Plaintiff's attorney then told the expert to assume that the hypothetical individual described by the ALJ is bothered by certain paints and enamels, can only walk a block, can only sit for 30 minutes and then would need to walk for 15 minutes, and that he has pain if he sits and walks for an eight hour-period, and asked if such a person could be employed. (Tr. 68-69) The expert answered no. (Tr. 69)
Plaintiff's attorney then added additional factors that the individual needs to take Proventil with modest or medium exertion, is hard of hearing in the left ear, fainted once while at work, ended up in the emergency room with breathing problem on two occasions after working at an auction for three hours holding up small objects and that he cannot work in an environment of fine dust or sawdust. (Tr. 73) The expert answered that such a person would not be able to work, especially because of the need to leave the work site and walk around for 15 minutes after sitting for 30 minutes. (Tr. 73)

ALJ FINDINGS
The ALJ found that plaintiff met the disability insured status requirements of the Act on April 5, 1993, the date plaintiff stated he became unable to work, and continues to meet them through September 30, 1997. (Tr. 18) The ALJ found that plaintiff has not engaged in substantial gainful activity since April 5, 1993. (Tr. 18) The ALJ further found that the medical evidence established that plaintiff has chronic obstructive pulmonary disease, mild osteoarthritis, a mild hearing impairment, alleged memory impairments, and alleged dizziness, but that he does not have an impairment or combination of impairments listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 18)
Additionally, the ALJ found that plaintiff and his wife were not credible. (Tr. 13) The ALJ also found that plaintiff has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except for lifting more than 10 pounds, prolonged walking or standing, and working in cold or damp environments. (Tr. 18)
*870 The ALJ further found that plaintiff is unable to perform his past relevant work as a carpenter, maintenance worker, or laborer, and that his residual functional capacity for the full range of sedentary work is reduced by his inability to tolerate cold or damp environments. (Tr. 18) The ALJ then found that pursuant to credible vocational expert testimony, plaintiff could perform work as a bench repairer, repairer of art objects, layout worker, or some painting jobs. (Tr. 19) The ALJ then concluded that plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 19)

DISCUSSION
Plaintiff alleges that he met the statistical FEV1 requirements under the pulmonary functioning listings for Chronic Obstructive Pulmonary Disease in the regulations.[2] Plaintiff also takes issue with the ALJ's finding of inconsistencies in the record. Finally, plaintiff claims that the ALJ's second hypothetical to the vocational expert did not state all of his impairments.
The Court finds no error in the ALJ's decision based on a review of the entire record as a whole, nor in the ALJ's determination that plaintiff is not disabled. Therefore, the ALJ's decision is affirmed.
The Secretary's decision as to the plaintiff's disability status is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence a reasonable person might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Secretary's final decision is supported by substantial evidence, the Court is required to review and consider the record as a whole. Stewart v. Secretary of HHS, 957 F.2d 581, 585 (8th Cir.1992).
Plaintiff alleges that his most recent pulmonary function test scores of FEV1 1.58 and 1.21 are below the listing criteria of FEV1 1.65 contained in the regulations for a person like plaintiff, who is 72 inches tall and suffering from chronic obstructive pulmonary disease. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02A. Therefore, plaintiff argues that he is disabled.
The record shows that plaintiff was given three pulmonary function tests. In October of 1993, plaintiff's height was recorded as 71 inches without shoes. (Tr. 147) The pulmonary function test performed at that time showed a post-bronchodilator FEV1 of 2.57 liters. (Tr. 156; Pltf.'s exh. A., pgs. 7-9) In March of 1994 another test was performed. (Tr. 184) Plaintiff's height was listed as 72 inches, although the record does not indicate if this was with or without shoes. (Tr. 184) He had a post-bronchodilator FEV1 of 1.58 liters. (Tr. 184). In June of 1994 another test was performed. (Tr. 184) Plaintiff's height was again listed as 72 inches, although the record again does not indicate if this was with or without shoes. (Tr. 188) Plaintiff's FEV1 was 1.21 liters. (Tr. 188)
The table in § 3.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1, lists an FEV1 score of 1.55 for individuals 71 inches tall as disabling. However, only those pulmonary function tests that are done in conformity with § 3.00E of 20 C.F.R. Part 404, Subpart P, Appendix 1, can be used when determining whether an individual is disabled under the Act. Section 3.00E states in part that the FEV1 score should represent the largest of at least three satisfactory forced expiratory maneuvers. There should also be minimal differences between the three values.
The Court notes initially that Dr. Kim's October 7, 1993 report unequivocally states that plaintiff is 71 inches tall without his shoes. Plaintiff's pulmonary function test of the same date also lists his height as 71 inches. Conversely, the other two pulmonary function tests which list plaintiff's height at 72 inches do not indicate if that height was determined while he wore his shoes. Since § 3.02A specifically measures height without shoes, the Court will use 71 inches as plaintiff's height, as that is the only *871 height supported by the record and that is consistent with the requirements of § 3.02A.
Plaintiff's October 1993 post-bronchodilator FEV1 of 2.57 liters and his March 1994 post-bronchodilator FEV, of 1.58 liters are both greater than the FEV1 score of 1.55 in the listings in Table 1 of § 3.02A. Thus, neither of those tests supports a finding that plaintiff is disabled.
Furthermore, plaintiff's June 1994 test does not comply with the documentation requirements of § 3.00E. There is nothing in the record showing that that FEV1 score represents the largest of at least three satisfactory forced expiratory maneuvers or that there were minimal differences between the three values as required. Thus, plaintiff's June 1994 FEV1 cannot be used to support a finding of disability.
Plaintiff next takes issue with the ALJ discounting his subjective complaints due to inconsistencies in the record. Plaintiff first contests the ALJ's findings concerning his memory problems. Plaintiff argues that the ALJ improperly relied on plaintiff's failure to seek help for his memory problems because the record does not dispute that he is unlikely to be able to afford such treatment. Plaintiff also argues that although the ALJ noted that plaintiff testified coherently and articulately at the hearing, plaintiff also testified as to several problems he was having with his memory.
In analyzing plaintiff's memory problems, the ALJ first noted that plaintiff never sought psychological or psychiatric help for this alleged deficiency. (Tr. 16) Furthermore, the ALJ noted that plaintiff was able to drive and play cards with his wife, activities which require concentration. (Tr. 16) Finally, the ALJ noted that no memory problems were evident at the hearing, as plaintiff was able to testify coherently and articulately. (Tr. 16) The ALJ concluded that plaintiff's memory problems were no more than a slight abnormality and could only have a minimal effect on his ability to work. (Tr. 16)
Plaintiff's failure to seek any treatment for his memory problems is certainly inconsistent with a claim that such is a disabling impairment. Furthermore, although plaintiff raises the possibility in his motion that his lack of treatment may have been due to financial problems, that does not excuse his failure to raise this issue with the doctors he actually saw. Furthermore, Dr. Kim's examination notes state that plaintiff's memory was good.
Additionally, plaintiff's ability to drive, play games, and testify coherently at the hearing are all inconsistent with a claim of disabling memory problems. Finally, plaintiff testified that he had the memory problems when he was a carpenter, and yet they did not preclude him from working at that time. The fact that plaintiff was able to perform his past job despite his memory problems supports the ALJ's finding that plaintiff was not disabled. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.1992); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).
Plaintiff next argues that the ALJ improperly found that his smoking cast doubt on his claims of shortness of breath. The ALJ noted in his findings that plaintiff has chronic obstructive pulmonary disease but that he continues to smoke. (Tr. 16) The ALJ found that this fact casts doubt on plaintiff's allegation of severe shortness of breath. (Tr. 16)
It is undisputed that plaintiff was repeatedly advised to stop smoking by his doctors to help his respiratory problems, but he continued. Plaintiff's failure to stop smoking, when some of his impairments are related to his smoking habit, as his physicians recommended, militates against a finding of disability. Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997).
Plaintiff next argues that the ALJ's finding that because plaintiff shot pool, played cards with his wife, and helped out at auctions he could perform sedentary work, was in error. Plaintiff claims such limited activities are not enough to establish that plaintiff is able to work full time.
The ALJ found that plaintiff's playing cards with his wife, going to a pool hall and shooting pool, and his helping out at auctions *872 are consistent with the ability to perform sedentary work. (Tr. 16) The Court finds no error in the ALJ's conclusion that such activities are consistent with the ability to perform sedentary work. Moreover, a review of the ALJ's opinion shows that this was not the only evidence relied on by the ALJ in making his ultimate determination that plaintiff was not disabled.[3]
Plaintiff also argues that the ALJ relied on an inconsistency between plaintiff's and his wife's testimony when, in fact, there was no inconsistency. Plaintiff claims that his wife testified that he could sit in a hard-backed chair for a couple of hours, whereas he testified that he could sit in such a chair for an hour and a half, except that he needed to get up and move around every thirty minutes.
The ALJ noted in his decision that plaintiff testified he can only sit for half an hour, whereas his wife testified that he can sit in a straight-back chair for two hours. (Tr. 16) The ALJ then noted that the hearing lasted an hour and forty minutes, but that plaintiff sat the entire time without getting up to move around. (Tr. 16)
Plaintiff's and his wife's testimony concerning how long he could sit are clearly inconsistent; plaintiff claimed he could sit for a half hour before he needed to get up and move around, and his wife stated he could sit for two hours before he needed to move. Furthermore, the fact that plaintiff sat for an hour and forty minutes at the hearing without needing to get up is inconsistent with his claim that he could sit for only a half hour.
Plaintiff next claims that the ALJ incorrectly found that he had a poor work history. Plaintiff claims that the record shows that, aside from 1989, he worked to the best of his ability up until the time he was unable to work at his normal job as a carpenter due to his impairments.
The ALJ stated that plaintiff had a poor work record and in the absence of an explanation, which plaintiff did not provide, his work motivation is questionable. (Tr. 17) The ALJ did not cite to any facts to support his finding that plaintiff had a poor work record. Moreover, a review of the record reveals a generally consistent work record by plaintiff up to the date he alleged that he became disabled.
The Court notes that this was just one of many factors relied on by the ALJ in discounting plaintiff's subjective complaints. The other factors cited to by the ALJ, such as the medical evidence, plaintiff's daily activities, and the hearing testimony, are supported by the record and are inconsistent with his complaints of disabling pain. The ALJ's one sentence finding plaintiff's work record as poor was not dispositive on the ultimate ALJ determination. Thus, although the ALJ was apparently mistaken with regard to his findings on plaintiff's work record, this deficiency in his opinion does not require setting aside the ALJ's decision. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir.1992).
Plaintiff also argues that the ALJ noted that plaintiff left the hospital against the advice of his physician. Plaintiff points out that he went to his physician four days later for additional treatment. Therefore, plaintiff claims that he did not give up treatment.
The ALJ stated that plaintiff has been noncompliant with medical advice. (Tr. 17) The ALJ then noted that plaintiff left the hospital against his doctor's advice on June 27, 1994. (Tr. 17) Thus, it is undisputed that plaintiff did not follow his doctor's advice on that date. There is nothing improper in the ALJ relying on a fact supported by the record.
Lastly, plaintiff claims that the ALJ improperly posed a hypothetical to the vocational expert by failing to include all of his impairments. Specifically, plaintiff claims that the ALJ's second hypothetical failed to include plaintiff's shortness of breath upon lifting anything heavy, his need to take medications upon having breathing problems, his constant back pain which gets worse if he sits in a chair and then stands off and on all day, and his inability to raise his arms above his shoulders.
*873 A hypothetical question presented to a vocational expert must set forth with reasonable precision a claimant's impairments. Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir.1992). Such a hypothetical, however, need only set forth those impairments and limitations which are accepted as true by the ALJ. Jenkins v. Bowen, 861 F.2d 1083, 1086-87 (8th Cir.1988).
The Court first notes that plaintiff's need to take medications upon having breathing problems is not in and of itself an impairment. Furthermore, the initial hypothetical the ALJ asked the expert included plaintiff's impairments that he cannot lift any weight of 10 pounds or more from the floor, can lift ten pounds from a table, and cannot raise his arms above the level of his shoulders. A review of the transcript shows that the second hypothetical was the same as the first, except that the environmental restriction of a dust free environment was removed. (Tr. 65) Thus, this hypothetical did include plaintiff's inability to lift heavy objects and to raise his arms above his shoulders.
Furthermore, as noted above, the ALJ discredited plaintiff's claim shortness of breath upon lifting anything heavy and his claim of his constant back pain, which gets worse if he sits in a chair and then stands off and on all day. Thus, the ALJ was not required to include those allegations in his hypothetical to the vocational expert. Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir.1994).
In conclusion, the Court finds that the hypothetical questions presented to the vocational expert set forth with reasonable precision plaintiff's impairments and also set forth his impairments and limitations which were accepted as true by the ALJ. That is all that is required. Starr, supra; Jenkins, supra.
THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.
IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.
NOTES
[1] President Clinton appointed John J. Callahan, Ph.D., to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan, Ph.D., should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).
[2] FEV1 stands for Forced Expiratory Volume. See Appendix I to Subpart P of 20 C.F.R. part 404.
[3] Plaintiff also makes a related argument that the ALJ oversimplified the evidence of plaintiff's activities. In any case, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's conclusions with regard to plaintiff's activities.