**Donna J. CROWE, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**Civil No. 3–97–CV–90166.**

United States District Court, S.D. Iowa, Davenport Division.

Feb. 17, 1998.

---

1. President Clinton appointed Kenneth S. Apfel to serve as Acting Commissioner of Social Security, effective September, 29, 1997, to succeed John J. Callahan. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.

John Bowman, Davenport, IA, for Plaintiff.

Gary L. Hayward, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Donna J. Crowe, filed a Complaint in this Court on September 5, 1997, seeking review of the Commissioner's decision to deny her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff, Donna J. Crowe, filed an application for disability benefits on August 21, 1995, claiming an onset of disability date of September 2, 1991. Tr. at 68–70. Her application was denied initially and upon reconsideration. After a hearing (Tr. at 24–47), Administrative Law Judge J. Michael Johnson (ALJ) issued a decision on January 11, 1997, denying benefits. Tr. at 8–19. On July 14, 1997, the Appeals Council denied Plaintiff's request for review. Tr. at 4–5. Plaintiff filed this Complaint on September 5, 1997.

## STANDARD OF REVIEW

We will uphold the Commissioner's determinations if they are supported by substantial evidence on the record as a whole. *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir.1994). Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993). "In assessing the substantiality of the evidence, we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." Id. We cannot overturn the Commissioner's decision merely because of the existence of substantial evidence supporting a different outcome. *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993).

*Spradling v. Callahan,* 126 F.3d 1072, 1073–74 (8th Cir.1997). In making this inquiry, a court should neither consider a claim de novo nor abdicate it's function to carefully analyze the entire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

## ALJ'S FINDINGS

Plaintiff last met the earnings requirement of the Act at the end of December, 1993. Tr. at 73 and 17. That is to say, Plaintiff must prove that she became disabled on or before that date. *Grebenick v. Chater,* 121 F.3d 1193, 1196 (8th Cir.1997). The ALJ, following the sequential evaluation found at 20 C.F.R. § 404.1520, found that Plaintiff has not engaged in substantial gainful activity since September 17, 1991. The ALJ found that Plaintiff, prior to December 31, 1993, had a severe impairment—essential tremors—but that the impairment was not so severe that it met or equaled an impairment listed in the Commissioner's regulations found in Appendix 1, Sub-part P, Regulations No. 4. Tr. at 17. The ALJ found that Plaintiff has the residual functional capacity (RFC) to lift 20 pounds occasionally or 10 pounds frequently. The ALJ also found that Plaintiff cannot do repetitive handling, nor

work around heights, vibrations, or moving machinery. At the fourth step of the sequential evaluation, the ALJ found that Plaintiff's impairment prevents her from performing her past relevant work. Tr. at 18. At the fifth step, the ALJ found that there are other jobs that exist in significant numbers for which Plaintiff has the RFC. Tr. at 19.

## DISCUSSION

■ It is well settled law that having found Plaintiff unable to do her past work, the burden of proof was on the Commissioner to prove, with medical evidence, that Plaintiff has a RFC, and that other jobs exist in significant numbers that such a person is able to perform. *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983); *Soth v. Shalala*, 827 F.Supp. 1415, 1417 (S.D.Iowa 1993); *Davis v. Callahan*, 985 F.Supp. 913 (S.D.Iowa 1997) and cases cited therein. See also *Simpson v. Callahan*, 979 F.Supp. 1264, 1266 (E.D.Mo. 1997). This rule of law, however, is not absolute. If the outcome is clear, regardless of who shoulders the burden of proof, the Commissioner's decision will be affirmed. *Wolfe v. Heckler*, 741 F.2d 1084, 1085–86 (8th Cir.1984). In *Ulrick v. Heckler*, 780 F.2d 1381, 1382 (8th Cir.1985) the Court wrote: "Since the record does not clearly indicate that Ulrick would have been denied benefits regardless of the burden of proof, we must remand." In the case at bar, it is the holding of the Court that Plaintiff could not prevail regardless of who bore the burden of proof.

At the alleged onset of disability date, Plaintiff was 51 years old, and she was 53 years old when her insured status expired at the end of 1993. Keep in mind that for Plaintiff to prevail in this action, the evidence must show that she became disabled prior to that date. Between April and July, 1992, Plaintiff was treated for temporomandibular joint pain. Tr. at 119–134. This problem was not claimed as a disabling impairment. Tr. at 80 and 39.

Plaintiff was seen by Steven C. Rasmus, M.D. March 13, 1991, Plaintiff was still working. The doctor wrote: "She is using a glue gun now and doing some riveting." Plaintiff was doing "very well" on the prescribed dose of medication. Plaintiff was seen again on June 2, 1992. Plaintiff had been laid off her job, "probably because of tremor" and was not able to do her crafts. A handwriting specimen was worse than previous, and the tremor was more apparent than before. Tr. at 144. When Plaintiff was seen on September 30, 1992, she was still not able to use a glue gun, but Dr. Rasmus opined that Plaintiff would not qualify for disability benefits. Tr. at 146. On May 27, Dr. Rasmus wrote to Nelson Chesney, M.D. Dr. Rasmus stated that Plaintiff's handwriting specimen showed a moderately severe tremor. Dr. Rasmus prescribed Klonopin. Tr. at 135. On June 3, 1993, Plaintiff called Dr. Rasmus' office from a pharmacy to report that the Klonopin was not providing any relief. She was told to discontinue the medication. An office note dated July 14, 1993 is report of a telephone conversation between Dr. Rasmus and Dr. Iltis. Since the medication Mysoline had been effective, initially, it was decided to prescribe it again. Tr. at 147. No other medical records from the time Plaintiff was insured for benefits appear in the record.

At the administrative hearing, the ALJ asked the vocational expert the following hypothetical question:

> So we're talking about a 12th grade level education, and past relevant work will be indicated as our recently received exhibit which you've prepared [Tr. at 118]. And with the following impairment. And here we're talking a bilateral tremor involving the hands. And the claimant would be able to work except for the following limitations which that would impose. And that of maximum work would not exceed 20 pounds, and repeated maximum lift could not exceed 10 pounds. There would be a limited environmental restrictions, no exposure to heights, vibration or to moving machinery; and limits on the hands would be as follows; in that there would be no requirement for repetitive handling of objects.

Tr. at 43. In response, the vocational expert testified that Plaintiff would not be able to do her past work (Tr. at 43), but that she would

be able to do unskilled work such as an usher, parking lot signaler, or telephone surveyor. Tr. at 44.

In arriving at the RFC described in the hypothetical, the ALJ stated that he gave Plaintiff the benefit of every doubt. "It should be noted," wrote the ALJ, "that this profile is very generous to the claimant." Tr. at 16. The only doctor to directly comment on Plaintiff's RFC was H. Richard Hornberger, M.D., a Disability Determination Services medical consultant who did not examine Plaintiff. Tr. at 88–97. Dr. Hornberger completed a RFC form on December 6, 1995—nearly two years after the expiration of Plaintiff's insured status. At that time, Dr. Hornberger opined that Plaintiff had no limitations on her ability to lift, stand, sit, or push/pull. Tr. at 89. The only limitation identified was "Fingering (fine manipulation)." Tr. at 91. In spite of Dr. Hornberger's opinion, which the ALJ found to be "well substantiated," the ALJ gave Plaintiff the benefit of the doubt and found the limitations specified in the hypothetical. Tr. at 16.

It may very well be that, as time progressed, Plaintiff's condition became worse and that she is now totally disabled. The fact remains, however, that in order for her to be found disabled, the evidence must show that she was unable to do any kind of work prior to December 31, 1993. Try as he might, the ALJ could not hold that the evidence supported such a finding, and this Court does not disagree.

■ Attached to Plaintiff's brief is the report of a psychological evaluation by JoAnn C. Milani, Ph.D., and two pages of treatment notes dated February 19, 1997, showing treatment for asthma. Plaintiff prays for a remand so that these pieces of evidence can be considered by the Commissioner or his ALJ. The Commissioner resists arguing: "Even when evidence is new and there is good cause for not submitting it to the Commissioner, in order for a remand to be granted, Plaintiff must show that the new evidence is not merely cumulative of the evidence in the record or that, if such evidence is made a part of the record, the decision of the Commissioner may have been different." In other words, the new evidence must be material

to the case. The Court agrees with the Commissioner that the new evidence would not be material, that is to say would not allow the Commissioner to make a decision different than that of the ALJ. After her evaluation, Dr. Milani diagnosed: Axis I, Generalized Anxiety Disorder with depression and somatization. Rule out Obsessive–Compulsive Disorder. Axis II, Borderline range of Intellectual functioning. Mixed Personality, dependent, obsessive-compulsive, avoidant. Post date last insured medical, psychological, and psychiatric evaluations are relevant to the extent they reflect upon the condition as of that date. *Fowler v. Bowen,* 866 F.2d 249, 252 (8th Cir.1989). Any effort on the part of the Court to find that the conclusions of the psychologist relate to the period of time during which Plaintiff was insured for benefits is frustrated by the report of the psychologist at the University of Iowa on July 22, 1994, only a few months after the expiration of Plaintiff's insured status. Steven Anderson, Ph.D. wrote:

> Personality evaluation did not reveal any psychological factors which are likely to play a significant role in this patient's medical presentation. She denied depressed mood and described an active lifestyle. Affect was normal, and responses on self-report inventories suggested only slight depressive symptomatology, largely secondary to physical concerns per the patient's report. I do not see a need for pharmacological or psychotherapeutic intervention, nor do personality issues appear to be of importance in her physical complaints.

Tr. at 138. In the opinion of the Court, while Dr. Milani's very thorough evaluation shows that Plaintiff is currently more severely disabled than she was at the time of the ALJ's decision, it does not reflect upon her condition prior to her date last insured.

Likewise, the treatment notes for asthma do not reflect on Plaintiff's condition prior to her date last insured. There is no evidence that Plaintiff, prior to her date last insured, complained of, or was treated for, asthma. Neither did she claim asthma was a disabling impairment. Furthermore, the treatment note of February 19, 1997, states that Plain-

tiff was feeling "markedly improved," that she "had marked improvement of her symptomatology," and that she had "no difficulties catching her breath." A remand to consider this treatment note would serve no useful purpose whatsoever.

Finally, Plaintiff argues that the vocational expert testimony does not support a finding of not disabled because it conflicts with the Dictionary of Occupational Titles (DOT). The vocational expert testified that the limitation in the hypothetical question of "no repetitive handling of objects" would allow for some unskilled work. Tr. at 44. When the ALJ changed the hypothetical to: "any gripping involved would be only occasional gripping" (Tr. at 44), the vocational expert testified that work would be possible only with "adaptation" by the employer. Tr. at 45. The ALJ relied on the answer to the first hypothetical. Tr. at 18. Having reviewed the testimony of the vocational expert, and comparing it to the citations from the DOT attached to Plaintiff's Supplemental Motion for Remand, the Court holds that the two are not so far at odds as to require the Court to set aside the ALJ's decision.

## DECISION

It is the holding of the Court that although Plaintiff met her burden of proving that she is unable to perform her past relevant work, and although the Commissioner did not come forward with medical evidence which supports a finding that Plaintiff has the RFC to do other work, the record sufficiently supports a finding that Plaintiff was not disabled prior to the expiration of her insured status. Rather than require the production of medical evidence, the ALJ credited Plaintiff's testimony, giving her the benefit of every doubt concerning her limitations prior to the end of her insured status. A remand to take additional evidence would serve no useful purpose. The Court has reviewed the entire record in detail, considering the evidence which supports, as well as evidence which detracts from, the ALJ's decision. The decision of the ALJ is supported by substantial evidence on the record as a whole and is not affected by errors of law that require reversal or remand. Plaintiff's motion to reverse

the Commissioner is denied. The Commissioner's motion to affirm the ALJ's decision is granted.

The Clerk will enter judgment accordingly.