Patricia A. NORMAN, SSN: 488–62–7055, Plaintiff,

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98–0081–CV–W–4–SSA.**

United States District Court, W.D. Missouri, Western Division.

Feb. 1, 1999.

Joan H. Deans, Raytown, MO, for plaintiff.

Frances E. Reddis, U.S. Attorney's Office, Kansas City, MO, for defendant.

## ORDER

FENNER, District Judge.

Plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The claim was denied initially and on reconsideration. On December 6, 1996, following a hearing, an administrative law judge (ALJ) found that plaintiff was not under a "disability" as defined in the Social Security Act. On October 3, 1997, the Appeals Council of the Social Security Administration denied plaintiff's request for review. After the denial of plaintiff's request for review, the Appeals Council received and considered additional evidence submitted by plaintiff. On November 17, 1997, after vacating its prior actions, the Council notified plaintiff

that it found no basis for granting her request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commission, subject to judicial review. 42 U.S.C. § 405(g).

■ To establish entitlement to benefits, a claimant must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which could be expected to result in death or which had lasted or could be expected to last for a continuous period of 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) is limited to whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Comstock v. Chater,* 91 F.3d 1143, 1145 (8th Cir.1996). The court's role is not to reweigh the evidence or try the issues *de novo. Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* "[Q]uestions of fact, including the credibility of a claimant's subjective testimony, are primarily for the [Commissioner] to decide, not the courts." *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987).

■ "[T]o engage in fact-finding in a social security case is not within the province of a federal court." *Id.* at .883. As the Eighth Circuit Court of Appeals stated in *Steele v. Sullivan,* 911 F.2d 115, 116 (8th Cir.1990):

Under the substantial evidence standard of review, "there is a zone of choice within which the [Commissioner] can go either way, without interference by the courts." *See Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984). Hence, "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."

*See also Robinson v. Sullivan,* 956 F.2d 836 (8th Cir.1992). Reversal is not appropriate even if the court, sitting as finder of fact, would have reached a contrary result. *Jernigan v. Sullivan,* 948 F.2d 1070, 1073 (8th Cir.1991).

In the case at bar, the ALJ specifically found that plaintiff's testimony about her inability to work lacked credibility. The ALJ's consideration of the subjective aspects of plaintiff's complaints comported with the regulation at 20 C.F.R. § 404.1529, and the framework set forth in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984). *Polaski* requires the ALJ to give full consideration to all evidence relating to a claimant's subjective complaints, including the claimant's prior work record, observations by third parties and physicians regarding claimant's disability, claimant's daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and the claimant's functional restrictions. *Id.* at 1322. If the ALJ finds inconsistencies between the claimant's subjective complaints and the objective evidence in the record, he may discount such complaints. *Polaski,* 739 F.2d at 1322. *See also, Wilson v. Chater,* 76 F.3d 238, 241 (8th Cir.1996); *Clark v. Chater,* 75 F.3d 414, 417 (8th Cir.1996).

■ The record here supports the ALJ's decision to reject plaintiff's subjective complaints of pain and conclude that the objective medical evidence did not support plaintiff's allegations of disability. For example, plaintiff argues that her 1994 EKG was suggestive of possible myocardial ischemia, however, the record reflects that a more specific 1994 angiography was normal. Similarly, despite plaintiff's complaints of persistent foot pain, her podiatrist noted that she had good range of motion bilaterally, and good post-operative healing after her surgery. Likewise, despite plaintiff's complaints of severe epigastric problems, her upper GI

series revealed only minimal gastroesophageal reflux disease, and she had a normal barium enema in 1993. Furthermore, Dr. Barney found that plaintiff had a basically normal physical examination, and Dr. Gilbrids, who evaluated plaintiff in June 1995, found no objective support for plaintiff's complaints of lower back pain. Moreover, Dr. Morrison, the psychiatrist who evaluated plaintiff for disability purposes, specifically opined that she was not psychiatrically disabled per se. He also felt that she had good ability to concentrate. The ALJ's evaluation of plaintiff's subjective complaints properly considered these inconsistencies between plaintiff's allegations of disability and the objective evidence in the record. *Wilson,* 76 F.3d at 241; *Clark,* 75 F.3d at 417; *Polaski,* 739 F.2d at 1322 (ALJ can disregard subjective complaints of pain that are inconsistent with the record as a whole).

■ Additionally, the evidence revealed that the bulk of plaintiff's conditions responded to treatment. Ms. Rich, a nurse practitioner who treated plaintiff, noted on two occasions that plaintiff's depression responded to the medication Serzone. Likewise, Dr. Gilbrids opined in 1995 that medication controlled plaintiff's asthma and sinus problems. Similarly, Dr. Herrick noted in 1996 that plaintiff's urinary incontinence responded to medication. An impairment that can be controlled by either treatment or medication is not disabling. *Qualls v. Apfel,* 158 F.3d 425, 427; *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995) (quoting *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *Thurn v. Apfel,* 994 F.Supp. 1156, 1167 (W.D.Mo. 1998) (medication controlled plaintiff's blood pressure).

The ALJ also noted that plaintiff was not compliant with her physicians' treatment recommendations. For instance, plaintiff continued to smoke despite her health care providers' repeated advice that she stop smoking. Likewise, plaintiff admitted on several occasions that she did not take her prescribed medications. Sim-

ilarly, although Dr. Cameron recommended that plaintiff undertake an exercise program for her fibromyalgia, there is no indication in the record that she did so. Plaintiff's failure to follow prescribed medical treatment for her allegedly disabling conditions tends to undermine the credibility of her testimony that her condition was disabling. *Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir.1997) (citing *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995)); *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995); *Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir.1989); *See also* 20 C.F.R. § 404.1530.

The fact that plaintiff failed to seek psychiatric treatment despite multiple recommendations that she do so also undermines her testimony that her mental impairment was disabling. *See e.g., Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir.1997) (failure to seek treatment militates against a finding of disability); *Wilson,* 76 F.3d at 241 (failure to seek treatment for pain is inconsistent with disabling pain); *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994); *Loving v. Dept. of Health and Human Services,* 16 F.3d 967, 970 (8th Cir. 1994); *Higgins v. Callahan,* 983 F.Supp. 865, 871 (E.D.Mo.1997) (failure to seek treatment for memory problems is inconsistent with allegations of disabling problems).

Further, despite plaintiff's assertion that she suffered from severe side effects from her medication, Ms. Rich specifically noted that plaintiff had no appreciable side effects from Serzone, and that the medication was helping her depression. *See, Polaski,* 739 F.2d at 1322; 20 C.F.R. § 404.1529(c)(3)(iv).

Plaintiff's daily activities were also inconsistent with her allegations of disabling pain from fibromyalgia. Plaintiff testified at the hearing that she could clean the kitchen, fix meals, do laundry, and do general household upkeep chores. These activities, when taken in conjunction with the other reasons the ALJ gave for discounting plaintiff's credibility, clearly detract

from her contention that pain prevented her from working. The ALJ's consideration of plaintiff's daily activities as inconsistent with her testimony of disabling pain comported with relevant case law. *See e.g., Qualls v. Apfel,* 158 F.3d 425, 428 (8th Cir.1998) (plaintiff's ability to read, watch television, do crafts, raise flowers, visit her parents regularly, attend church twice a week, drive, attend to personal business, cook, clean, do laundry, go grocery shopping, and take care of her grandchildren shows that despite her complaints of fatigue and pain, plaintiff can still engage in extensive daily activities); *Black v. Apfel,* 143 F.3d 383, 385 (8th Cir.1998) (activities such as household work, visiting friends, and attending church were inconsistent with complaints of debilitating pain); *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir.1997) (activities such as light housework, employment shelf-stacking, studying for the GED, and conducting Sunday school classes undermined plaintiff's testimony of disabling pain).

It is further significant that none of plaintiff's doctors ever opined that she was disabled from any of her conditions. Dr. Cameron recommended that she undertake an exercise program to control her fibromyalgia. Likewise, Dr. Morrison specifically indicated that plaintiff was not disabled from psychiatric illness and would not have difficulty concentrating. *See e.g., Brown v. Chater,* 87 F.3d 963, 965 (8th Cir.1996) (citing *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993)) (lack of significant medical restrictions on plaintiff's activities inconsistent with plaintiff's complaints of disabling pain); *Cruse v. Bowen,* 867 F.2d 1183, 1186 (8th Cir.1989) (no doctor said plaintiff was disabled).

Plaintiff asserts that the ALJ improperly considered her failure to stop smoking because he did not determine whether she had made a good faith attempt to stop smoking and failed. However, Ms. Rich's February 1996 treatment note states that plaintiff refused the offer of a prescription for Nicotrol patches because she said that she could not afford them. However, Ms. Rich also noted plaintiff's statement that she continued to smoke despite her financial difficulties because she found a place where she could charge cigarettes. Plaintiff's ability to purchase cigarettes conflicts with her statement that she could not afford to pay for a medication to help her stop smoking. *See Sias v. Secretary of HHS,* 861 F.2d 475, 480 (6th Cir.1988) (holding that the monetary cost of smoking could be applied towards the cost of needed treatment).

Moreover, despite plaintiff's assertions to the contrary, the ALJ's consideration of plaintiff's continued smoking against the advice of her physicians comported with relevant case law. *See, Sias,* 861 F.2d at 480 (the court rejected plaintiff's application for disability benefits, in part because of plaintiff's refusal to stop smoking to the detriment of his health). *See also, Higgins v. Callahan,* 983 F.Supp. 865, 871 (E.D.Mo.1997) (plaintiff's failure to stop smoking when some of his impairments are related to his smoking habit, militates against a finding of disability).

Plaintiff also argues that the ALJ should have considered her financial constraints when he evaluated her failure to seek treatment for her mental disorder and for her smoking habit. However, the Eighth Circuit has specifically held that plaintiff's lack of financial resources does not excuse her failure to seek medical treatment absent evidence that plaintiff sought low or no-cost treatment or that any provider denied her treatment because of her financial situation. *Clark v. Shalala,* 28 F.3d 828, 831 n. 4 (8th Cir.1994) (although economic justifications for the lack of treatment can be relevant to a disability determination, the plaintiff offered no testimony or other evidence that anyone had denied her further treatment or access to prescription pain medication on account of her financial constraints.); *Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir.1989) (assertions of lack of financial resources and insurance cover-

age were not convincing where plaintiff made no effort to inform any doctor of her dilemma or to take advantage of any available medical assistance programs); *Murphy v. Sullivan*, 953 F.2d 383, 386–387 (8th Cir.1992). In this case, although Ms. Rich repeatedly urged plaintiff to explore low and no cost psychiatric treatment options, there is no indication that plaintiff did so. Because plaintiff has not demonstrated that she sought and was denied psychiatric treatment or other medications, she cannot claim that her financial situation prevented her from obtaining treatment.

The ALJ articulated the inconsistencies on which he relied in discrediting plaintiff's testimony regarding her subjective complaints, and substantial evidence in the record as a whole supports his finding that plaintiff was not a credible witness. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir.1996); *Wilson*, 76 F.3d at 241; *Shannon v. Chater*, 54 F.3d 484, 487–488 (8th Cir.1995).

Plaintiff also argues that the ALJ improperly formulated her residual functional capacity (RFC), and consequently, that he posed an inaccurate hypothetical question to the vocational expert to solicit testimony that plaintiff could make a vocational adjustment to other work. Specifically, relying on Dr. Frank's 1995 opinion that plaintiff had a limited ability to sit, stand, and walk, plaintiff contends that the ALJ's hypothetical question should have included greater physical restrictions. Similarly, plaintiff contends that the hypothetical question should have included further information about her difficulty concentrating.

As demonstrated in the discussion of the ALJ's credibility determination above, the record did not support any further physical limitations than those that the ALJ determined. Furthermore, given the fact that Dr. Frank only saw plaintiff once, and, given the conflict between Dr. Frank's restrictions and the rest of the evidence discussed *supra*, the ALJ was not bound to afford substantial evidence to Dr. Frank's opinion. *See e.g., Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir.1994); *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir.1992); *Cooper v. Secretary of HHS*, 919 F.2d 1317, 1320 (8th Cir.1990).

Likewise, Dr. Morrison specifically opined that plaintiff would have a good ability to concentrate. This fact, which is consistent with the rest of the evidence in the record discussed *supra*, supports the ALJ's assessment of plaintiff's mental impairments.

Plaintiff also presented evidence to the Appeals Council indicating that she had attempted suicide and had begun drinking again in June 1997. However, this evidence does not reflect plaintiff's condition at the time of the hearing before the ALJ. Thus, the evidence does not warrant remand. *See e.g., Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir.1997); *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993); *Goad v. Shalala*, 7 F.3d 1397, 1398 (8th Cir.1993) (per curiam); *Crowe v. Apfel*, 993 F.Supp. 697, 700 (S.D.Iowa 1998).

■ Plaintiff does correctly assert that questions posed to vocational experts should precisely set out the claimant's particular physical and mental impairments. *House v. Shalala*, 34 F.3d 691, 694 (8th Cir.1994) citing *Greene v. Sullivan*, 923 F.2d 99, 101 (8th Cir.1991). Nevertheless, the ALJ's hypothetical question need include only those impairments for which the ALJ finds substantial support in the record. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir.1996), citations omitted. In the case at bar, the record supports the ALJ discounting plaintiff's allegations of the severity of her condition, and consequently, the physical restrictions Dr. Frank described as well as severe mental impairments plaintiff alleged. Accordingly, the hypothetical question to the vocational expert properly excluded those impairments. Because the hypothetical question given to the vocational expert corresponded to the impairments as determined by the ALJ, the hypothetical question was proper. The vocational expert's response that plaintiff

would be able to perform jobs that existed in the national economy in significant numbers, amounts to substantial evidence supporting the ALJ's decision. *See Cruze,* 85 F.3d at 1326.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is AFFIRMED.