**Roy LOVING, Plaintiff–Appellant,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, SECRETARY, Defendant–Appellee.**

**No. 93–2508.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1994.

Decided Feb. 28, 1994.

Counsel who presented argument on behalf of the appellant was David R. Trussell of Little Rock, AR.

Counsel who presented argument on behalf of the appellee was Rodney A. Johnson of HHS of Dallas, TX.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KOPF,* District Judge.

KOPF, District Judge.

In this social security case, Roy Loving (Loving) appeals from the district court's [1] decision on cross-motions for summary judgment affirming the denial of benefits. The Secretary had ruled that Loving was not disabled for purposes of Title II disability insurance benefits, 42 U.S.C. §§ 416(i) and 423, at any time prior to December 15, 1989.[2] For the reasons set forth below, we affirm the order of the district court which affirmed the final decision of the Secretary.

I.

The brief of the Secretary presented to the district court contained the following stipulated facts:

Loving sustained an on-the-job back injury in July, 1984. His condition steadily improved, and by January, 1986, he had settled his workers' compensation claim and was released from medical care with a five-percent permanent impairment to his body as a whole.

In July, 1986, Loving was diagnosed with colon cancer. The cancer was successfully excised and following surgery, Loving underwent radiation therapy. Loving did not tolerate the radiation therapy well and insisted

---

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Henry Jones, United States Magistrate Judge for the Eastern District of Arkansas, acting pursuant to 28 U.S.C. § 636(c).

2. Loving previously sought benefits after claiming a disability onset date of August 13, 1984. However, a prior administrative decision adjudicated Loving's entitlement to benefits through April 15, 1988. It was the determination of the first administrative law judge (ALJ) that Loving was not entitled to disability benefits based on claims filed July 21, 1986, and December 22, 1986. Loving did not appeal the prior denial of benefits. The ALJ in this case determined that since this case involved the same party, the same material factors, and the same issues, the doctrine of res judicata applied, and Loving's request that he be reheard on the issue of disability for the period from August 13, 1984, through April 15, 1988, was denied. Neither party objected to this finding before the district court or before this court. Thus, this case concerns a claim for benefits after an onset date of April 16, 1988.

on terminating the treatment.[3] A follow-up colonoscopy was performed in April, 1987, and there were no signs of recurrence of the colon cancer.

In the fall of 1987, Loving again began to complain of back pain. A CT scan was ordered and showed only mild degenerative joint changes. Loving's doctor determined that this back impairment had no impact on Loving's ability to lift and carry, sit, stand or walk, or perform pushing, pulling or reaching functions.

Medical evidence relative to the disability onset date of April 16, 1988, shows that Loving reported bright red blood from the rectum on June 6, 1989. A repeat colonoscopy revealed no evidence of recurrence of colon cancer.

After consideration of the record, the ALJ determined that while Loving could not return to his past relevant work as a concrete finisher, welder or scraper operator, he retained the residual functional capacity to perform the full range of sedentary work. Thus, Loving was not found to be disabled for purposes of Title II disability insurance benefits for any time prior to December 15, 1989. However, as of December 15, 1989, when Loving became 50 years old, the ALJ concluded Loving was disabled for purposes of supplemental security income benefits only.

## II.

It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo. Rather, our task on review is to determine whether there is substantial evidence in the record as a whole to support the Secretary's decision that Loving was not disabled at any time prior to December 15, 1989. *Murphy v. Sullivan,* 953 F.2d 383, 384 (8th Cir.1992). As part of that analysis, we must take into account that evidence in the record which "fairly detracts from the weight of the evidence supporting the ALJ's decision" and apply a balancing test to all of the evidence. *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th

Cir.1989); *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987).

With these guidelines in mind, we turn to the record in this case.

### A.

The ALJ conducted the five-step sequential evaluation process outlined in the regulations of the Social Security Administration at 20 C.F.R. 404.1520 and 20 C.F.R. 416.920 for the evaluation of Loving's disability. First, the ALJ determined that Loving had not performed substantial gainful activity at any time relevant to his disability claim. Our review of the record reveals Loving has not been gainfully employed since his back injury in 1984.

Second, the ALJ determined that the combination of Loving's back pain and his post-colon-cancer status resulted in a finding that Loving had alleged severe impairments which interfered with his ability to work.

At the third step of the sequential evaluation process, however, the ALJ determined that because there had been no recurrence of the colon cancer for three years and because Loving's back problems did not satisfy the level of severity described in the listing of impairments, Loving was not entitled to a determination that his conditions were presumptively disabling. *See* Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.05C and 13.18.

The fourth step of the evaluation process required the ALJ to determine whether Loving had the residual functional capacity to perform his past relevant work. Loving had previously worked in heavy construction and as a farm laborer. The ALJ determined Loving could not return to his past relevant work because his past jobs all required the ability to perform at least light work.

At the fifth step in the evaluation process, the ALJ concluded that while Loving did not have the ability to perform light work, he did have the ability to perform sedentary work. And that is the rub.

3. Loving's testimony during his administrative hearing indicated he terminated the radiation therapy after "better than a week." (Tr. 34; Admin.Hr'g Tr. of 10/16/90.)

Loving argues that the Secretary erred when she determined he could perform the full range of sedentary work. Loving also argues the Secretary had an obligation to retain a vocational expert who could enlighten the ALJ about how his mental impairments and inability to sit for significant periods would affect his ability to perform the full range of sedentary work.

## B.

■ Our review of the medical evidence and testimony presented at the administrative hearing persuades us the ALJ was correct in his determination that Loving retained the residual functional capacity to perform the full range of sedentary work and that he was not disabled prior to December 16, 1989. There is no medical evidence the ALJ could have relied on which would have established a complete disability based upon either of Loving's impairments. Further, the ALJ was not prohibited from applying the medical/vocational guidelines to determine that Loving retained the residual functional capacity to perform the full range of sedentary work. The ALJ properly discredited Loving's complaints of exertion limitations, and the medical evidence and Loving's testimony supported the finding that Loving's exertion limitations did not affect his residual functional capacity to perform the full range of sedentary work. Thus, it was not necessary for the ALJ to resort to the testimony of a vocational expert since the ALJ found, and the record supported the finding, that his exertion impairment did not diminish Loving's residual functional capacity to perform the full range of activity listed in the guidelines. *Thompson v. Bowen,* 850 F.2d 346, 349–50 (8th Cir.1988).

The record presented to the ALJ for purposes of the administrative hearing held October 16, 1990, did not contain any medical evidence related to Loving's back problem for the period between April 16, 1988, and December 16, 1989, and the only evidence related to Loving's colon cancer indicated

there had been no recurrence. While it appears Loving's age became a factor in finding him disabled on December 16, 1989, the ALJ did not miss anything in the medical evidence such that Loving could have been found to be disabled as a result of either of his severe impairments prior to December 16, 1989.

The medical evidence shows that although Loving was diagnosed with colon cancer in July, 1986, he reported by December, 1986, that he was feeling well, eating well, and able to carry on with his usual activities. In June, 1989, a follow-up colonoscopy revealed no evidence of recurrence of the cancer.

The medical evidence related to Loving's back injury and his back and neck pain revealed that conservative treatment of the injury had resulted in a good recovery, although the injury was aggravated in 1986. While Loving complained of back pain during his administrative hearing, there is no medical evidence [4] in the record subsequent to the fall of 1987 related to Loving's back impairment.

■ While we recognize pain may be disabling in and of itself, the ALJ in this case carefully discredited Loving's claim that he is disabled due to pain and discomfort. The ALJ analyzed Loving's testimony in accordance with the specific criteria set out in *Polaski v. Heckler,* 751 F.2d 943 (8th Cir. 1984).

■ Loving testified his daily activities included watching television, reading, visiting people, going to church, and driving his truck thirty to forty miles per week. Loving also testified he had been fishing four or five times in the previous two years. At the same time, Loving testified he could walk three quarters of a mile if he walked slowly, but he had trouble bending over or squatting to pick things up off the floor and had lost grip strength in his hands. Loving testified he believed he could probably lift five to six pounds. Loving also testified that while pain

4. During treatment for his back injury in 1984 and 1985, Loving's therapist encouraged him to lose weight because excess weight can aggravate a back problem. During this period, Loving's weight ranged from 272 pounds to 285 pounds.

Loving's therapist helped him set a goal weight of 218 pounds, to be achieved through diet and exercise. At the time of his hearing before the ALJ, Loving weighed 299 pounds. He is 5 feet 11 inches tall. (Tr. 108–141; 338.)

medication had been prescribed for him, he preferred to take aspirin and Tylenol.

The ALJ concluded Loving's testimony concerning his pain was not credible and could not support a finding of disability since the testimony was inconsistent with the objective medical evidence and with Loving's daily activities. Consequently, the ALJ concluded Loving could perform sedentary work without experiencing significant pain.

Loving urges this court to consider the report of his treating physician, Dr. Williams, a gastroenterologist. Dr. Williams determined Loving lacked the ability to perform sedentary work because he did not believe Loving could sit for more than one hour or more than four hours during an eight-hour workday. Dr. Williams also stated that Loving could only stand or walk for one hour each and could only occasionally lift and carry up to ten pounds, and never more than that.

The ALJ discredited these findings in part because Dr. Williams' conclusions appeared to be outside the scope of his expertise, but, more importantly, also because Dr. Williams did not submit any objective medical evidence in support of his conclusions. While the opinions of a treating physician are entitled to substantial weight, *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir.1992), a physician's conclusory statement of disability without supporting evidence does not overcome substantial medical evidence supporting the Secretary's decision. *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir.1992).

■ We are not persuaded that Dr. Williams' conclusions are sufficient to outweigh the objective medical evidence that Loving had not reported back pain since the fall of 1987 or the evidence that the only pain medications Loving was taking consisted of aspirin and Tylenol. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Furthermore, Loving's own testimony about the scope of his daily activities would suggest he retains the ability to sit and stand and lift light weights.

■ Loving also urges reconsideration of a report prepared by a psychologist who concluded Loving's IQ of 74 was evidence of "borderline nonverbal intellectual ability." Psychological testing also revealed Loving was reading at the third-grade level, which amounted to functional illiteracy, and that his mathematical skills were also third-grade level. The psychologist concluded Loving was not retrainable or employable since he was no longer able to do the physically demanding work which would ordinarily be available to someone with his cognitive skills.

The ALJ discredited the psychologist's opinion regarding Loving's employability because the psychologist was not qualified to assess Loving's physical condition. In addition, the ALJ determined that the record established Loving is literate. Loving testified he reads for an hour each day, and the record established he was able to fill out questionnaires in conjunction with his application for disability benefits. Furthermore, a one-time evaluation by a nontreating psychologist is of little significance by itself, *Browning*, 958 F.2d at 823, and in this case, where there is substantial evidence in the record to discredit the psychologist's opinion that Loving is illiterate, the ALJ did not commit reversible error in failing to credit the report.

### III.

Upon review of the record as a whole, we think substantial evidence supports the Secretary's decision to deny disability benefits to Loving for any time prior to December 16, 1989. The Secretary's decision that Loving was not disabled prior to December 16, 1989 is affirmed.