Renita QUINLAN, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 1:96 CV 74 DDN.

United States District Court,
E.D. Missouri,
Southeastern Division.

April 7, 1997.

Donald R. Rhodes, Bloomfield, MO, for plaintiff.

Madeleine B. Cole, Office of U.S. Attorney, St. Louis, MO, for defendant.

### *MEMORANDUM*

NOCE, United States Magistrate Judge.

This action is before the Court upon the motions of the parties for summary judgment

---

under Rule 56, Federal Rules of Civil Procedure. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c)(3).

Plaintiff Renita Quinlan brought this action for judicial review of the denial of her claim for supplemental security income benefits based upon disability under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq.* Plaintiff applied for these benefits on September 23, 1994. She alleged she became disabled in 1989 on account of arthritis and "hurt[ing] all the time." (Tr. 77–80, 92.)

On September 15, 1995, after a de novo hearing, an administrative law judge (ALJ) decided that plaintiff was not disabled under the Act. The ALJ found that plaintiff had not performed substantial gainful activity since at least the date she applied for benefits; that she suffers from osteoarthritis of the lumbar and thoracic spine, arthritic changes of the sacroiliac spine, recurrent bronchitis and sinusitis, hiatus hernia, peptic ulcer disease, and recurrent headaches; that none of these impairments, individually or in combination with one or more other impairments, is the equivalent of any impairment in the Commissioner's list of disabling impairments, 20 C.F.R. Part 404, Subpt. P, App. 1; that plaintiff's complaints that the impairments are of disabling severity are not credible; that plaintiff has the residual functional capacity to perform physical exertional requirements of work, except for lifting more than ten pounds; that claimant cannot perform her past relevant work as a gas station attendant; that she has the residual functional capacity to perform a full range of sedentary work; that plaintiff is 42 years of age, a younger individual; that she has a limited education; and that under Rules 201.24 and 201.25 of Table No. 1 of Appendix 2, Subpt. P, Regulations No. 4, and 20 C.F.R. § 416.920(f), plaintiff is not disabled. (Tr. 15.) The Appeals Council denied plaintiff's request for a review of the ALJ's decision (Tr. 3–4) and that decision became the final decision of the defendant Commissioner of Social Security.

The Commissioner's decision is conclusive upon this Court, if it is supported by substantial evidence, which is relevant evidence which a reasonable person could accept as adequate to support the decision. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). To be disabled under the Act, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to end in death or which has lasted or can be expected to last for not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

If plaintiff Quinlan proves that she is unable to perform her past relevant work because of a medically determinable impairment, the burden shifts to the Commissioner to show that she can perform other work which exists in significant numbers in the national economy. *McMillian v. Schweiker,* 697 F.2d 215, 220–21 (8th Cir.1983). In this case, the ALJ acknowledged this shift to the Commissioner of the burden to show that there is a significant number of jobs in the national economy which plaintiff can perform. (Tr. 14.)

In reviewing the record for substantial evidence, the Court may not make its own findings of fact by reweighing the evidence and substituting its own judgment for that of the Commissioner. *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987). The determination of the existence of substantial evidence in the record requires the Court to consider the evidence of record which detracts from the Commissioner's decision as well as the evidence which supports it. *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir.1987) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). *See also Clarke v. Bowen,* 843 F.2d 271, 272 (8th Cir.1988). A reviewing court must affirm a decision based upon factual findings that are supported by substantial evidence. 42 U.S.C. § 405(g); *Baker v. Secretary of Health and Human Services,* 955 F.2d 552, 554 (8th Cir.1992).

The record indicates that at the time of the hearing before the ALJ plaintiff was 42 years of age and had a ninth grade education.

Theodore Roberts, M.D., treated plaintiff from March 23, 1990, to December 1, 1992. Dr. Roberts saw plaintiff for a variety of general complaints, including back pain and bronchial symptoms. (Tr. 152–71.)

On April 20, 1993, plaintiff was hospitalized for complaints of pelvic pain. At the time of admission, plaintiff smoked one and one-half packages of cigarettes a day. (Tr. 149.) She underwent a cystoscopy, laparotomy, right salpingo-oophorectomy, and lysis of adhesions. Her hospital course was uneventful and she was discharged on April 24, 1993. (Tr. 146.)

Ted Hatfield, M.D., treated plaintiff for general complaints of shortness of breath, headaches, and arthritic pain. (Tr. 108–16.) On November 11, 1994, plaintiff complained of shoulder pain with weakness. X-rays of her chest showed no active disease, although there were some increased bronchial markings and chronic changes. (Tr. 111.) The x-ray, however, was negative for acute cardiopulmonary process. (Tr. 116.) On November 14, 1994, Dr. Hatfield noted that plaintiff was "all smiles," stating that her shoulder was well, and she had a full range of motion. (Tr. 110.) On December 5, 1994, Dr. Hatfield noted that plaintiff continued to have trouble with her hernia. He also noted that she had gained more weight and continued to drink coffee and smoke despite his advice to the contrary. On that date, her lungs were essentially clear. (Tr. 109.)

On March 5, 1995, Dr. Hatfield reported that plaintiff's CT scan showed only a little bulging posterior aspect of the disc, but no herniation and no spinal stenosis. She had only a little arthritic change. He advised plaintiff to get in shape, lose weight, and do some conditioning exercises. (Tr. 187.) On March 22, 1995, however, plaintiff complained of increased back pain. Dr. Hatfield noted that plaintiff was not following through with her exercise program or diet. Straight leg raising was negative and there was no CVA tenderness. Her lungs were clear. (Tr. 186.) On January 12, 1995, Dr. Hatfield stated that plaintiff was actually doing better although she continued to complain of pain all the time. (Tr. 185.) In August 1995, Dr. Hatfield treated plaintiff for complaints of pneumonia. (Tr. 183.) On September 15, 1995, Dr. Hatfield noted that plaintiff was feeling much better. Her lungs were fairly clear, and her main complaint was back pain. (Tr. 181.)

On August 18, 1994, x-rays of plaintiff's lumbar spine showed a normal curvature and well preserved intervertebral disc spaces. There were some early osteoarthritic changes in the lower and upper lumbar and thoracic vertebra. X-rays of plaintiff's hips failed to demonstrate any bony abnormality, although there was some sacroiliac arthritic changes. (Tr. 131.)

On September 23, 1994, plaintiff completed a form in which she indicated that her physician told her that she needed to lose weight, do more walking, and get more exercise. Her daily activities included getting her children off to school, cooking, house cleaning, and laundry. She was able to drive and visit with friends. She also occasionally fished. (Tr. 95.)

On October 24, 1994, D.K. Varma, M.D., performed an examination on plaintiff who complained of pain all over her body. Dr. Varma noted that plaintiff had done odd jobs most of her life and quit working in 1981. (Tr. 138.) Plaintiff acknowledged smoking one pack of cigarettes daily for the last several years. Dr. Varma found no cough or shortness of breath either at rest or on exertion. Plaintiff had a good appetite with no hemetemesis or melena. Dr. Varma noted that plaintiff was normally built, fairly nourished, obese, alert, and cooperative. She did not look sick, acutely or chronically. (Tr. 139.) Plaintiff's neck was supple with normal movements of the cervical spine. Plaintiff's respiratory system was normal. She had normal curvature of the entire spine. Movements of her extremity joints were all within normal limits. Deep tendon reflexes were also normal and symmetrical. (Tr. 140.) Dr. Varma completed a range of motion chart showing that plaintiff had completely normal range of motion in all extremities. (Tr. 144–45.) He concluded:

There is no evidence of joint pain, swelling, tenderness or inflammation of any of the affected joints. There is no joint abnormality. Range of motion chart is attached.

Graded grip strength and fine finger movements are normal. Patient's gait is normal. There is no evidence of any neurological abnormality.

(Tr. 141.)

On April 25, 1995, Dr. Hatfield referred plaintiff to Phillip Taylor, M.D., for an evaluation of her back and joint pain. Plaintiff's motor and sensory testing was normal and her reflexes were present and equal. Dr. Taylor's musculoskeletal examination was normal: plaintiff had no limitation of motion, crepitation, or pain on motion of any joint. There was some tenderness in the hips and in the muscles of the upper and lower back. Although lumbar extension was limited, back flexion was normal and she could touch her toes with her fingers bending forward. (Tr. 174.) Dr. Taylor stated that plaintiff's physical examination was negative except for pain on back motion and tender zones. He concluded that she most likely had fibromyalgia and some early degenerative lumbar spine disease. (Tr. 175.)

Plaintiff alleged disability due to osteoarthritis, headaches, bladder problems, and nerves. (Tr. 29.) She testified that she occasionally had to sit down and relax when she got very nervous. She had urinary tract infections which required her to go to the bathroom frequently. (Tr. 32.) Plaintiff claimed that she had stiffness and pain in her joints, back, and hips which kept her from sitting in one place for long periods of time. (Tr. 35.) Plaintiff acknowledged that she could stand for 45 minutes to one hour, walk two to four blocks, and sit for 30 minutes to an hour. (Tr. 36.) She was able to lift her granddaughter, who weighed 17 to 18 pounds. She was also able to carry a gallon of milk. (Tr. 37.)

Plaintiff testified that she lived with her boyfriend and two children, ages 9 and 13. She and her boyfriend both did the cooking and dishes. In addition, her children helped her with household chores. Plaintiff did a little vacuuming. She tried to clean up the house a little bit on a daily basis. (Tr. 39, 41.) She continued to drive on a regular basis, and could drive for 50 to 60 miles without stopping. (Tr. 40.) She indicated that she had never really worked at a regular job for a substantial period of time. (Tr. 28–29.) Plaintiff fishes approximately three times a month. (Tr. 46.) She quit her job because she got married and moved out of state. (Tr. 28.)

■ In her motion for summary judgment, plaintiff argues that the ALJ committed reversible error by applying an improper standard when assessing the pain suffered by plaintiff. In the Court's analysis, the ALJ complied with required legal standards when disbelieving plaintiff's subjective assertions about the extent of her pain. *See* 20 C.F.R. § 416.929(c); *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984). "Where there are inconsistencies in the evidence as a whole, the [Commissioner] may discount subjective complaints." *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995) (per curiam). *See also Pena v. Chater,* 76 F.3d 906, 908 (8th Cir.1996). The ALJ observed that the medical evidence did not support plaintiff's allegations of disabling arthritic pain. X-rays performed over a four-year period showed only early changes of osteoarthritis. There were no signs of arthritis in her hips, and her spine had normal curvature and well preserved intervertebral disc spaces. Dr. Varma's examination revealed a full range of motion in all of plaintiff's extremities with only minimal pain.

■ Plaintiff complained of shortness of breath and disabling bronchial symptoms. However, the record indicated that she continued to smoke one to one and one-half packages of cigarettes a day despite her physician's admonishments to stop. The record also shows that plaintiff failed to follow her physician's advice regarding diet and exercise. The failure to follow prescribed treatment may support a conclusion of not disabled. *Thomas v. Sullivan,* 928 F.2d 255, 259–60 (8th Cir.1991).

The ALJ lawfully discredited plaintiff's testimony about the degree of pain suffered, due to the absence of an objective medical basis for the degree of pain she asserted. *Barrett v. Shalala,* 38 F.3d 1019, 1022 (8th Cir.1994). Further facts properly considered on the issue of credibility were plaintiff's poor work record; the record indicates that she voluntarily chose to quit work in 1981.

In addition, plaintiff's daily activities are not consistent with those of a person suffering from disabling pain. In the questionnaire she filled out and in her testimony, plaintiff stated that she was able to do some cooking and light housework. She also did some of the laundry and helped her children prepare for school. She was able to lift her 18 pound granddaughter and went fishing on occasion. The ALJ was justified in relying on this record to find plaintiff's testimony not credible. *Shannon v. Chater,* 54 F.3d 484, 487 (8th Cir.1995).

Plaintiff also argues that the ALJ committed reversible error by failing to assess the combination of her impairments and by failing to determine the total impact the combination of impairments had upon her ability to work. The record is clear that the ALJ considered all of plaintiff's impairments, individually and in combination. (Tr. 15.)

■ Plaintiff argues that the record fails to sustain the Commissioner's burden of showing that she is capable of performing work, other than her past work as a gas station attendant, which exists in the national economy; plaintiff specifically argues that the ALJ's finding that she had the residual functional capacity to perform a full range of sedentary work is not supported by substantial evidence.

The ALJ's finding that plaintiff had the residual functional capacity to perform a full range of sedentary work is supported by substantial evidence. Sedentary work does not require bending or twisting; it requires only occasional stooping, lifting only 10 pounds, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); *Ownbey v. Shalala,* 5 F.3d 342, 344 (8th Cir.1993). The evidence supports the ALJ's conclusion that plaintiff was capable of a full range of sedentary work. Thus, the ALJ properly applied Rules 201.24 and 201.25 of the Medical–Vocational Guidelines to find that plaintiff was not disabled. *See Loving v. Dept. of HHS,* 16 F.3d 967, 970 (8th Cir.1994). The use of the Guidelines satisfies the Commissioner's burden without having to identify specific jobs which plaintiff could perform. *McCoy v.*

*Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc).

For the reasons set out above, the Court determines that the final decision of the Commissioner of Social Security is supported by substantial evidence. An appropriate order is issued herewith denying the motion of the plaintiff for summary judgment and sustaining the motion of the defendant for summary judgment.