**Flora COOKEMBOO, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**No. 1:96 CV 193 DDN.**

United States District Court, E.D. Missouri, Southeastern Division.

Oct. 15, 1997.

---

1. Effective September 29, 1997, Kenneth S. Apfel became the Commissioner of Social Security and is substituted for Shirley S. Chater and for John J. Callahan as defendant in this action. Fed. R.Civ.P. 25(d)(1).

Therese A. Schellhammer, Little and Schellhammer, Poplar Bluff, MO, for plaintiff.

Wesley D. Wedemeyer, Office of U.S. Attorney, St. Louis, MO, for defendant.

## MEMORANDUM

NOCE, United States Magistrate Judge.

This cause is before the Court upon the parties' cross motions for summary judgment under Federal Rule of Civil Procedure 56. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

Plaintiff Flora Cookemboo has brought this action for judicial review of the denial of her claim for supplemental security income (SSI) benefits based upon disability under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 *et seq.* Plaintiff applied for these benefits on January 6, 1995, alleging she became disabled on August 15, 1991, due to pesticide poisoning of the lungs, asthma, emphysema, lung and heart problems, high blood pressure, back problems, the shaking of her whole body, and nervous irritability. . (Tr. 83, 108–09).

On January 8, 1996, after an evidentiary hearing, an administrative law judge (ALJ) determined that plaintiff was not disabled under the Act. The ALJ did not take testimony from a Vocational Expert (VE) regarding jobs that plaintiff could do. Specifically, the ALJ found that plaintiff: has not engaged in substantial gainful activity since 1991; is 36 years old, a "younger person" under the regulations; has an eighth grade, or "limited" education; has, according to medical evidence, chronic obstructive pulmonary disease (COPD), hypertension controlled by medication, but no impairments (or combination thereof) listed in or equal to those in the Commissioner's list of disabling impairments; is unable to perform her past relevant work as a waitress, cook, dishwasher, janitor, visiting homemaker or nurse's aide; has no transferable work skills; has the residual functional capacity (RFC) to perform exertional and nonexertional requirements of work except for heavy work in a highly polluted atmosphere; has the exertional capacity for sedentary work, which is not diminished by any nonexertional limitations; and, as a consequence, as indicated by the "grid" regulations, was not disabled under the Act at any time through the date of the decision (January 8, 1996).[2] (Tr. 12, 14–15). The

---

**2.** 20 C.F.R. § 416.969, referring to the Medical Vocational Guidelines of 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Social Security Administration (SSA) Appeals Council denied review and the decision of the ALJ became the final decision of the Commissioner.

■ The Court must affirm findings of the ALJ that are supported by substantial evidence. 42 U.S.C. § 405(g); *Baker v. Secretary of HHS,* 955 F.2d 552, 554 (8th Cir. 1992). Substantial evidence is relevant evidence which a reasonable person could accept as adequate to support the conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In reviewing the record, the Court may not make its own findings of fact or substitute its judgment for that of the Commissioner. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986). Nevertheless, this standard of review is not a rubber stamp for the Commissioner's decision, and is more than a search for substantial evidence supporting it. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983) (internal citations omitted); *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir.1987).

■ To be disabled under the Act, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to end in death or which has lasted or can be expected to last for not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). If plaintiff proves that she has no past relevant work or is unable to perform her past relevant work because of a medically determinable impairment, the burden of proof shifts to the Commissioner to show that the claimant has the residual functional capacity (RFC) to perform other substantial gainful activity (SGA) at work which exists in significant numbers in the national economy. *Clark v. Shalala,* 28 F.3d 828, 830 (8th Cir. 1994); *McMillian v. Schweiker,* 697 F.2d at 220–21.

■ In this case, the ALJ found that plaintiff could not perform her past relevant work (Tr. 15); however, the ALJ failed to acknowledge the shifting of the burden of proof. He turned to the medical-vocational guidelines (the "grids") to carry the Commissioner's burden and found plaintiff was able to perform sedentary work. He did not take testimony from a Vocational Expert (VE). The failure of an ALJ to acknowledge the shifting of the burden creates a presumption that the burden remained improperly on the plaintiff, and is grounds for reversal. *Bradshaw v. Heckler,* 810 F.2d 786, 789 (8th Cir. 1987). However, assuming the burden shifted as required, the Commissioner may carry his burden by referring to the grids. *Hutsell v. Sullivan,* 892 F.2d 747, 750 (8th Cir.1989). The grids may be used to determine that jobs exist for a claimant with a specified (1) physical residual functional capacity, (2) age, (3) education, and (4) past work experience. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The proper application of the grids makes VE testimony unnecessary. *See generally, McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982)(en banc). However, the existence of significant nonexertional impairments precludes the use of the grids, and requires the testimony of a VE. *Foreman v. Callahan,* 122 F.3d 24, 26 (8th Cir.1997); *Talbott v. Bowen,* 821 F.2d 511, 515 (8th Cir.1987). Plaintiff testified to severe nonexertional impairments, including pain, "nerves," and depression. (Tr. 12, 27, 28, 34, 35, 40, 41, 43–45).

The ALJ found that plaintiff's alleged symptoms were not credible and that "her occupational base is not significantly eroded by any nonexertional limitation." (Tr. 14). He based this credibility/ability finding on her apparent failure to seek medical treatment between the date of her disability (August 1991) and December 1993, some sixteen months; her ability to do light housework; and her continued smoking in spite of medical advice to the contrary. (Tr. 13–14).

■ Pain is evaluated by reference to SSA standards (20 C.F.R. § 416.929) and case law, particularly *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984)(subsequent history omitted). The ALJ made reference in his findings to *Polaski*'s factors (Tr. 13), as he must. *Haynes v. Shalala,* 26 F.3d 812, 814 (8th Cir.1994). If an ALJ finds inconsistencies in the record as a whole, he may discredit subjective complaints; if he explicitly discredits a claimant's testimony and gives a good reason for doing so, the Court will

normally defer to his judgment. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir.1996); *Brockman v. Sullivan*, 987 F.2d 1344, 1347 (8th Cir.1993).

▮▮▮▮ Defendant argues that the ALJ properly discredited plaintiff's accounts of pain because a failure to seek medical treatment is inconsistent with allegations of a disabling impairment. This is correct, but its application to plaintiff is uncertain, since she pursued continued and regular medical treatment outside of this sixteen month period. There is no indication in the record that she was asked to account for the period in question even though it was used as the "primary inconsistency" against her, in finding her testimony incredible. (Tr. 14). From the record, it appears that the ALJ relied on the absence of a notation in the records of her treating physician, Dr. George, to arrive at this conclusion. (Tr. 172; Def. Mot. at 2, Doc. No. 18). The record does not clearly reflect that this discrediting is based on substantial evidence, particularly since plaintiff was given no opportunity to explain what was apparently a key element in the denial of her claim.

Defendant also argues that plaintiff received no medical determinations of disability or restrictions from work. In the circumstances of this case, this factor is not supportive of the ALJ's decision. The record does not reflect that plaintiff requested such a vocational evaluation, and the ALJ, without such evidence, found that plaintiff's impairments were severe enough to preclude her from returning to her past work.

The other major element of discrediting plaintiff's subjective allegations was her lack of cooperation with medical advice to stop smoking. The ALJ specifically pointed to this to find that she was not credible in her allegations of being unable to work in many kinds of atmospheric environments, and it is argued as evidence of her lack of credibility generally. (Tr. 13–14; Def. Mot. at 8, Doc. No. 18). However, the ALJ misstated her testimony. He found that plaintiff smoked "three to four packs of cigarettes per day." (Tr. 13). However, plaintiff testified, "I am down to half a pack a day. I was smoking three packs. I am trying to quit." (Tr. 32). This distinction is important, because the ALJ relied on the higher figure to show she

was noncompliant and apparently disregarded her testimony that she was trying to comply and had made significant progress in doing so.

Defendant further argues that, because plaintiff receives AFDC payments, and her husband disability payments, "This begs a question of her motivation to qualify for disability benefits." (Def. Mot. at 9, Doc. No. 18). The ALJ did not refer to this factor in his decision. There is no evidence whatsoever of a "strong element of secondary gain." *See, e.g., Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir.1996). This plaintiff of very modest means and extended work history in numerous, if only moderately successful, jobs bears no resemblance to the plaintiff in *Gaddis*. Plaintiff testified that her husband was a welder, has heart trouble, and had a lung removed. (Tr. 46–47).

▮▮▮ The ALJ referred to plaintiff's daily activities as evidence of her capacity for at least sedentary work. "She continues to do laundry, shop, sets the table, washes dishes once a week, and vacuums once a month." (Tr. 14). Defendant argues that these activities, as well as driving, having "some social contacts," attending church, watching television and reading the newspaper disprove plaintiff's allegation of pain and disability. Defendant relies on *Loving v. Dep't of HHS*, 16 F.3d 967, 970–71 (8th Cir.1994), for the proposition that "activities such as driving, visiting people, reading, and going to church are inconsistent with claims of disability." (Def. Mot. at 9, Doc. No. 18). *Loving* involved credibility determinations of a plaintiff who alleged not only disabling pain but illiteracy, and his testimony that he read for an hour each day was part of the finding against his credibility. The court in *Loving* suggested that some of the aforementioned activities could be inconsistent with subjective complaints of disabling pain. The Eighth Circuit has held that the kind of daily activities in this record without more are assuredly not indicative of a capacity for gainful employment. "We have repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."

*Hogg v. Shalala,* 45 F.3d 276, 278–79 (8th Cir.1995).

> This court often has noted that an ability to do light housework does not necessarily indicate an ability to perform gainful employment.... We do not find [plaintiff's] daily activities consistent with a conclusion that he can perform light work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982).

*Ricketts v. Secretary of HHS,* 902 F.2d 661, 663 (8th Cir.1990). *See also Flanery v. Chater,* 112 F.3d at 350 (8th Cir.1997); *Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989); *Nettles v. Schweiker,* 714 F.2d 833, 837 (8th Cir.1983).

Plaintiff testified as follows:

> I try to sew a little bit, but I can't do very much of that, because I can't sit. And activities, I don't do very much. I don't like being around people ... the laundry and the wash, they [the plaintiff's daughters] do most of it. Sometimes I'll put in a load. If I got a good day, then I put in a few loads.... My husband takes me [shopping] ... [I] drive once in a while, not often. I get nervous....[will sometimes drive to doctor or school if a teacher needs to see her] ... I don't go to [daughters' activities] ... I don't like to be around people. I don't want them to visit me... I tell [family members] to stay away... I go to church once in a while... [cannot carry groceries] because my chest gets to hurting....

(Tr. 34–38).

■ This testimony contradicts defendant's finding. The testimony itself cannot be evidence to discredit plaintiff's allegations when it consists of plaintiff's allegations. When answering a written disability questionnaire, plaintiff extensively described her daily activities as having been diminished. (Tr. 120–130). The record does not support the finding of the ALJ that these activities indicate a residual functional capacity for sedentary work.

■ Finally, the ALJ's decision makes no further reference to plaintiff's allegations of depression and "nerves," after acknowledging the latter as an allegation. Plaintiff specifically testified to emotional and psychological factors as impairments at the hearing.[3] (Tr. 27, 44). The record reflects many references to her prescription for Hydroxyzine (Tr. 116, 117, 129) and at least two references to a prescription for Xanax. (Tr. 142, 171). The former is prescribed for symptomatic relief of anxiety and tension associated with psychoneurosis, the latter for management of anxiety disorder, panic disorder and associated depression. *Physicians' Desk Reference* at 1944, 2185; 2650–51 (Fiftieth Ed.)(1996).

■ "Where the evidence of exertional limitations is extremely limited, and the dispute focuses on whether the claimant has the emotional capacity to engage in sustained employment, resort to the grid is inappropriate." *Foreman v. Callahan,* 122 F.3d 24, 26 (8th Cir.1997); *Tennant v. Schweiker,* 683 F.2d 707, 709–710 (8th Cir.1982); *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir. 1982).

The Commissioner has not proved that plaintiff has the residual functional capacity for a full range of "at least" sedentary work and that there is a significant number of jobs in the national economy plaintiff can do. He has discussed only plaintiff's burden of proof while finding plaintiff unable to return to her past work. Furthermore, the ALJ has not properly addressed plaintiff's allegations of emotional and psychological impairments, and inappropriately relied on the grids instead of hearing the testimony of a vocational expert. The record is insufficient and requires expansion, in particular the testimony from a qualified vocational expert, and medical evidence to ascertain the extent of plaintiff's mental and other nonexertional impairments.

---

3. "Nerves" is not a proper medical term, but plaintiff is not a physician. *See, e.g.,* "(5) Nerves, nervousness: an attack of nerves," (*Random House Compact Unabridged Dictionary,* 1289 (1996)); "Nervousness: a condition of being nervous," (*Steadman's Medical Dictionary,* 1036 (25th Ed.)(1990)); "Nervous (2): Easily excited or agitated; suffering from mental or emotional instability; tense or anxious," (*Id.*). *See also* "Nervous breakdown: Nonmedical term for an emotional or mental illness; often a euphemism for a psychiatric disorder." (*Id.*).

**1280**

For these reasons, the motion of plaintiff for summary judgment is sustained, to the extent that the action is remanded to the Commissioner for further proceedings. The motion of the defendant for summary judgment is denied.