# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3518

_____

Harry J. Howe,                  *

                                *

           Appellant,        *    Appeal from the United States

                                *    District Court for the

      v.                        *    Southern District of Iowa.

                                *

Michael J. Astrue, Commissioner of    *

Social Security,                *

                                *

           Appellee.         *

_____

Submitted:  June 15, 2007
Filed: August 24, 2007

_____

Before MURPHY, BOWMAN, and SHEPHERD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Harry J. Howe appeals from an order of the District Court[1] affirming the Commissioner of Social Security's denial of his application for disability insurance benefits.  After careful review of the record, we affirm.

On November 30, 1992, Howe, at the time a 43-year-old iron worker, was injured on the job when a bucket of iron rods struck him on the head and shoulder.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

He was taken to the emergency room and was diagnosed with cervical, thoracic, and lumbosacral spine strains. Howe received conservative medical treatment after his injury, including pain medication, a lumbar corset, chiropractic care, and physical therapy, and he also participated in a work-hardening program. Results from a functional capacity assessment (FCA) conducted on May 3 and 4, 1993, indicated that Howe was capable of performing light work but should be allowed to alternate among standing, sitting, and walking positions; should not lift any weight overhead; and should be allowed "adequate time" to complete tasks requiring "[u]pper extremity coordination." App. at 159. On May 17, 1993, Howe was released to return to work with these restrictions.

Howe continued to complain of pain and underwent additional treatment, including a lumbar epidural injection, a subscapular bursa injection, and parathoracic nerve blocks. On September 2, 1993, an EMG/nerve conduction study of Howe's upper extremities indicated "cervical radiculopathy" and "bilateral carpal tunnel syndrome." App. at 117. Results from a second FCA conducted on November 2 and 3, 1993, again indicated that Howe was capable of performing light work. The second FCA stated that Howe had an "adequate" ability to kneel, sit, and walk but "need[ed] to vary his position frequently"; that he was "unable to safely lift or reach (weighted) overhead"; and that he worked at an "overall slow to moderate pace, pacing himself effectively to allow maximum tolerance." App. at 148, 150–51. On December 9, 1993, Dr. Johnson, Howe's treating physician, released Howe to return to work subject to the limitations noted in the November 1993 FCA and with the additional limitation that Howe not perform repetitive hand motions because of his carpal tunnel syndrome.

Between November 1993 and March 1994, Howe was seen four times by Dr. Roski, a neurosurgeon, who "didn't see anything that [he] would consider from a surgical standpoint" for Howe's carpal tunnel syndrome, and who suggested that Howe work on "an aggressive conditioning therapy program." App. at 119. On February 17, 1994, Howe was examined by another neurologist, Dr. Cullen, who

noted that Howe had received a considerable level of rehabilitative treatment without significant improvement. Dr. Cullen concluded that Howe was not disabled, however, and suggested that Howe attend a chronic pain rehabilitation program.

Dr. Johnson saw Howe on March 10, 1994, at which time Howe reported that his pain had decreased by fifty percent after he began taking Prozac. When Howe later reported an increase in his pain, Dr. Johnson learned that Howe had stopped taking Prozac, claiming that he could not afford it. When Howe resumed taking the medication, his pain symptoms again decreased. In March 1995, Dr. Johnson reported that Howe's condition had not worsened, that he was tolerating his pain, and that he should wear his wrist splints more consistently.

On November 21, 1995, Howe underwent a consultative examination conducted by Dr. Chithambo, who confirmed Howe's chronic neck, thoracic, and back pain. Dr. Chithambo's notes indicate that Howe reported that his pain was alleviated by Prozac, but that he had discontinued the prescription due to its cost.

In December 1997, Dr. Johnson examined Howe and noted that he continued to complain of chronic neck pain but that Howe had normal strength, intact sensation, and normal reflexes. He also noted that Howe's carpal tunnel symptoms had improved. In November 1998, Dr. Johnson stated that Howe's prognosis had not changed in the year since he had last seen Howe.

On August 4, 1995, Howe filed an application for disability insurance benefits, alleging a disability onset date of December 1, 1992,[2] due to nerve and muscle damage in his cervical, thoracic, and lumbar spine. The Commissioner denied Howe's application for benefits. Howe sought review before an administrative law judge

---

[2]The ALJ concluded that Howe is insured for disability benefits through June 30, 1999, a conclusion that neither party contests on appeal.

(ALJ), who conducted a hearing and found that Howe suffered from the severe impairments of cervical thoracic radiculopathy, chronic pain syndrome, mild bilateral carpal tunnel syndrome, and bilateral sensorineural hearing loss. The ALJ ultimately determined, however, that because these impairments did not reach listing-level severity, Howe was not entitled to benefits. The Social Security Administration Appeals Council denied review, thus rendering the ALJ's decision final. Howe then sought review in the District Court, which reversed the ALJ's decision and remanded with instructions to give appropriate weight to Dr. Johnson's opinion that Howe suffered from carpal tunnel syndrome and to include such a restriction in the hypothetical question posed to the vocational expert (VE).

The ALJ held a supplemental hearing and again concluded that Howe was not disabled and thus not entitled to benefits. The Appeals Council denied Howe's request for review. Howe again sought review in the District Court, arguing that the ALJ's decision was not supported by substantial evidence and that an outright award of benefits was appropriate. In response, the Commissioner filed a motion requesting that the District Court remand the case to an ALJ for additional development of the record. Over Howe's objection, the District Court granted the Commissioner's motion. Although the court concluded that "substantial evidence . . . support[ed] the ALJ's [findings] with regard to any limitations attributable to carpal tunnel syndrome," the court instructed the ALJ to "adequately address [Howe's] credibility regarding his stated need to change positions frequently, and to work at a 'slow pace.'" Order of June 13, 2003, at 5–6.

After a third hearing, this time before a different ALJ, Howe's application for benefits was again denied. Again, the Appeals Council declined review. For the third time, Howe sought review of the ALJ's decision in the District Court. On August 2, 2006, the District Court affirmed the denial of benefits. Howe appeals, and we affirm.

While we review de novo a district court's decision affirming the denial of disability insurance benefits, Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007), "[i]t is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue[s] . . . de novo," Loving v. Dep't of Health & Human Servs., 16 F.3d 967, 969 (8th Cir. 1994). Instead, we review the ALJ's decision to determine whether it is supported by substantial evidence on the record as a whole, that is, whether evidence was presented that a reasonable mind would find adequate to support the ALJ's conclusion. Id. In making this determination, we consider both evidence that supports the ALJ's decision and evidence that detracts from it. Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004). If substantial evidence supports the ALJ's decision, we will not reverse it merely because substantial evidence would have supported a contrary outcome or because we might have decided the case differently in the first instance. Id.

Howe first argues that the ALJ failed to give controlling weight to the medical opinions of his treating physician, Dr. Johnson. Specifically, Howe argues that the ALJ improperly evaluated the evidence regarding Howe's need to alternate among sitting, standing, and walking positions; to work at a slow pace; and to avoid repetitive hand motions. While the opinion of a treating physician is entitled to substantial weight, it is not conclusive because the record must be evaluated as a whole. Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004). Moreover, "[a] treating physician's opinion is afforded less deference when the medical evidence in the record as a whole contradicts the opinion." Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999).

Considering the record before us as a whole, we conclude that the ALJ assigned the proper weight to Dr. Johnson's opinions. The November 1993 FCA stated that Howe was capable of performing light work. The FCA also noted that Howe's major strengths included his sitting, standing, and walking tolerance, but stated that Howe

should be permitted to alternate positions "frequently."[3]  App. at 151.  In a December 1993 letter releasing Howe to return to work, Dr. Johnson specifically adopted these limitations and recommended an additional limitation on repetitive hand motions.

The ALJ asked the VE a hypothetical question adopting the limitations described in the November 1993 FCA.  The VE was asked to assume an individual of Howe's age, education, work experience, and combination of impairments who

> retained the residual functional capacity [RFC] to lift up to 20 pounds occasionally and ten pounds frequently.  He could carry up to 35 pounds occasionally and 22 pounds frequently.  He could level lift up to 25 pounds occasionally and 13 pounds frequently.  He could push up to 57 pounds and pull up to 59 pounds.  He could sit for up to one hour at a time for a total of about six hours in an eight-hour day.  He could stand or walk for up to one hour at a time for a total of about six hours in an eight-hour day.  He could occasionally bend, stoop, squat, or climb.  He could occasionally work with his arms overhead.  He could not perform work requiring fine hearing acuity in the presence of background noise.  He could not perform fast-paced work, but could work at a regular pace.

App. at 270–71 (Decision of ALJ, July 29, 2004, at 15–16, summarizing hypothetical question posed to VE).  Based on this hypothetical, the VE concluded that Howe could perform several jobs available in the local and national economy.

---

[3]The first FCA performed in May 1993 likewise concluded that Howe was capable of performing light work, should be allowed to alter from a standing position to sitting or walking "as needed," and should be allowed "adequate time" to complete activities involving upper extremity coordination.  App. at 159.  Although Dr. Johnson did not specifically adopt the restrictions described in the May 1993 FCA in releasing Howe to return to work, this FCA is pertinent medical evidence to support the ALJ's determination of Howe's limitations.

Howe argues that the ALJ did not properly take into account his need to alternate positions frequently, as noted in the November 1993 FCA, or his need to work at a slow pace. With respect to alternating positions, the ALJ's formulation of the hypothetical question described an individual who could "sit for up to one hour at a time for a total of about six hours in an eight-hour day . . . and stand or walk for up to one hour at a time for a total of about six hours in an eight-hour day." Id. The ALJ explained that formulation of the hypothetical was based on 1) the FCA's conclusion that Howe was capable of performing light work, 2) Howe's testimony that he could drive a vehicle continuously for an hour and a half, and 3) the absence of any suggestion from Howe's treating physicians that Howe's condition required more frequent position changes. As for working at a slow pace, the ALJ's hypothetical question assumed an individual who "could not perform fast-paced work, but could work at a regular pace." Id. This description is consistent with the conclusion reached in the FCA—and adopted by Dr. Johnson—that Howe was capable of performing light work. The ALJ properly evaluated the medical evidence regarding Howe's limitations—including the opinions of Howe's treating physician.

Howe also argues that the evidence regarding limitations attributable to his carpal tunnel syndrome have never been properly assessed. We disagree. In its first remand order, the District Court concluded that the ALJ "failed to give appropriate weight to the restrictions imposed by . . . [Dr. Johnson] to account for [Howe's] carpal tunnel syndrome," and the court ordered the ALJ to correct this error on remand. Order of August 25, 1999, at 3. At the second hearing before the ALJ, a consultative orthopedic surgeon, Dr. Baird, testified that Howe's hand strength was normal bilaterally and that there was no evidence of the muscle wasting or atrophy typically associated with carpal tunnel syndrome. Considering the entirety of the record—including Dr. Johnson's, Dr. Roski's, and Dr. Baird's conflicting opinions regarding the effect of carpal tunnel syndrome on Howe's ability to work—the ALJ concluded that Dr. Johnson's opinion was not entitled to controlling weight as it was inconsistent with the other evidence in the record. See Johnson v. Apfel, 240 F.3d

1145, 1148 (8th Cir. 2001) (holding that ALJ may exclude "alleged impairments that she has properly rejected as untrue or unsubstantiated"); Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004) (noting that ALJ may consider opinion of non-examining, consulting physician). Nevertheless, for purposes of the hypothetical question posed to the VE at the second administrative hearing, the ALJ included a limitation on repetitive hand motions. According to the VE, an individual with the same characteristics and limitations as Howe—including a limitation on repetitive hand motions—could perform a number of light, unskilled jobs that exist in the economy. In other words, the VE testified that even if Howe was required to avoid all repetitive hand motions, he could still be employed as an outside deliverer, counter attendant, or fast-food worker. After careful review of the record, we conclude that substantial evidence supported the ALJ's conclusions regarding the effects of carpal tunnel syndrome on Howe's ability to work.

In sum, the ALJ properly evaluated the opinions of Dr. Johnson regarding Howe's limitations, discounting those opinions when they were contradicted by or inconsistent with other evidence in the record. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) (noting that if a doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight"). The ALJ's findings are supported by substantial evidence. See Loving, 16 F.3d at 969.

Howe next argues that the ALJ improperly discredited his subjective complaints of pain. We described the factors an ALJ must consider when evaluating a claimant's subjective complaints of pain in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (per curiam order), and the ALJ in this case properly identified the Polaski factors and considered evidence relevant to those factors. The ALJ reviewed the evidence and found Howe's subjective complaints of pain inconsistent with the medically objective evidence and with other evidence of Howe's ability to engage in everyday activities. For example, Howe claimed that he could not sit for more than fifteen minutes without standing and moving about. He testified, however, that he

could drive continuously for an hour and a half. He claimed that carpal tunnel syndrome prevented him from performing work with his hands. Other evidence indicated, however, that Howe damaged his wrist splints while engaging in his "active" lifestyle, App. at 267 (Decision of ALJ, July 29, 2004, at 12); he injured his right wrist playing catch with his grandson; and he used a chainsaw to cut wood. Howe complained of debilitating pain, yet testified that he took no prescription pain medications. He also discontinued using one of the drugs that gave him relief, Prozac, claiming that he could not afford it. On review, "[w]e will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain." Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). We conclude that in this case, the ALJ pointed to substantial evidence on the record in support of the decision to discount Howe's subjective complaints of pain. Because the ALJ described the inconsistencies on which he relied in discrediting Howe's complaints and because those inconsistences were supported by the record, we affirm the ALJ's credibility finding. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

Finally, Howe claims that the ALJ posed improper hypothetical questions to the VE. Howe contends that the ALJ failed to include appropriate limitations related to his carpal tunnel syndrome, his need to change positions frequently, and his need to work at a slow pace. Howe correctly notes that a VE's opinion is relevant only if the ALJ accurately characterizes a claimant's medical conditions in the hypothetical questions posed to the VE. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994) (stating that "[u]nless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a [VE] will be unable to accurately assess whether jobs do exist for the claimant"). A hypothetical, however, need only include impairments that are supported by the record and that the ALJ accepts as valid. Prosch v. Apfel, 201 F.3d 1010, 1015 (8th Cir. 2000); see also Clay v. Barnhart, 417 F.3d 922, 931 (8th Cir. 2005) (noting that the ALJ did not err in omitting additional restrictions not supported by evidence). Howe fails to show that

the ALJ in this case mischaracterized Howe's symptoms and limitations. Accordingly, because the VE, in response to a hypothetical that captured the consequences of Howe's deficiencies, described readily available jobs Howe could perform, the Commissioner successfully demonstrated Howe's ability to perform jobs in the national economy. <u>See</u> <u>Reed v. Sullivan</u>, 988 F.2d 812, 815–16 (8th Cir. 1993) (describing burden of proof).

The ALJ's determination that Howe was not disabled is supported by substantial evidence on the record as a whole. Accordingly, we affirm.

———————————————————